777 P.2d 733

**Nancy E. SKELTON and Martha Bonar, Plaintiffs–Respondents,**

v.

**James HANEY and Janice A. Haley, husband and wife, Defendants–Appellants.**

**Elton R. MODROO and Cathy Modroo, husband and wife, Plaintiffs–Respondents,**

v.

**James HANEY and Janice A. Haley, husband and wife, Defendants–Appellants.**

No. 17338.

Supreme Court of Idaho.

July 31, 1989.

Gordon S. Nielson, Boise, argued for defendants-appellants.

Davison, Copple, Copple & Copple, Boise, for plaintiffs-respondents Skelton/Bonar. Scot M. Ludwig argued.

Green & Nyman, Boise, for plaintiffs-respondents Modroos. Kenneth D. Nyman argued.

BAKES, Chief Justice.

This consolidation of two cases involves legal disputes between neighbors concerning easements. The trial court's ruling enjoined defendant appellants James Haney and Janice Haley from interfering with separate easements held by (1) plaintiff respondents Nancy Skelton and Martha Bonar and (2) plaintiff respondents Elton and Cathy Modroo. The trial court also awarded attorney fees and costs (to Skelton/Bonar) and costs and punitive damages (to the Modroos). We affirm the trial court and,

because the appeal essentially raises only factual issues, we award costs and attorney fees on appeal to all respondents.

Prior to October 19, 1966, Harley and Lois Wade owned all the real property in question, and the plaintiffs and defendants in the action have succeeded to Wade's interest. On October 19, 1966, the Wades transferred a portion of their property to Robert and Lorraine Wesely, who then transferred their interest to plaintiffs Skelton/Bonar on September 23, 1975. It was acknowledged by Harley Wade that at the time he made the transfer to the Weselys that they also had an implied easement over "Pet Haven Lane," a gravel roadway leading to their property because there was no other access. Pet Haven Lane is an approximately 50-foot wide roadway extending from State Highway 21 to Pet Haven Cemetery and to the driveway to the Skelton/Bonar residence. This implied easement was transferred to Skelton/Bonar as an appurtenance to the property granted in the Weselys' September 23, 1975, deed to Skelton/Bonar.

On October 14, 1977, the Wades sold a portion of their remaining property to the Bowers. In addition, the Wades granted a written easement to the Bowers on this day. This easement also consisted of Pet Haven Lane as well as an approximately 20-foot wide parcel curving from the end of Pet Haven Lane to the Bowers' driveway. The plaintiffs Modroos acquired this easement by deed when they bought the Bowers' property in 1984. The Wades transferred the remaining property to Haney/Haley on December 11, 1980. See descriptive map attached.

After selling the property to Haney/Haley, Harley Wade continued to live on the property until June, 1981. From the time

that Haney/Haley took possession of the remaining property from Harley Wade until the time that this lawsuit was commenced, Haney/Haley allegedly attempted to extinguish the easements on their property. These attempts ranged from the grading of a small drainage ditch to the random placement of beautification rocks. It was disputed whether these presented an obstacle to the use of the easements or gave notice that defendants were asserting a hostile interest. However, the erection in September, 1986, of a 10-foot high deer-proof fence was an unmistakably hostile action. The fence went up the middle of Pet Haven Lane and into the curved parcel of the deeded Modroo easement. Because the roadway is sometimes slick in the winter, making access difficult to begin with, the fence seriously interfered with the use of both easements by plaintiffs Skelton/Bonar and the Modroos. In order to protect their respective easements, the plaintiffs filed separate actions against Haney/Haley, which were consolidated for trial to the court without a jury.

The district court ruled in favor of the plaintiffs. The trial court held that Haney/Haley had not extinguished any part of the written Modroo easement by adverse possession and that the fences constituted a trespass on this easement which was "deliberate, willful and malicious," thereby justifying an award of punitive damages, $7,500 in addition to costs, $164.[1] The trial court also held that Skelton/Bonar had an implied easement for ingress and egress on Pet Haven Lane and that Haney/Haley had failed to extinguish any part of this easement. Skelton/Bonar were awarded attorney fees, $5,250, and discretionary costs, $2,166.25, because "defendants' conduct was outrageous," "ill-founded" and "unreasonable." The trial court also issued a permanent injunction to

1. Subsequently, the trial court revised its ruling and held that a small triangular shaped portion of the Modroo easement at the northeastern end of "Pet Haven Lane" was extinguished. The triangle consisted of an area on the side of the roadway sloping up to a hillside which Harley Wade had decorated with brick chips and shrub-bery. The trial court adopted the legal description of the triangle as presented by the Modroos and rejected the description offered by Haney/Haley because it would have drastically impeded traffic on "Pet Haven Lane." The Skelton/Bonar implied easement was not affected by this revision.

prevent further interference by Haney/Haley with the plaintiffs' use and enjoyment of their property and easements. Having considered appellants' arguments and reviewed the record, we affirm the trial court's findings of fact, conclusions of law and judgment in all respects.

Respondents have requested attorney fees on appeal. Under I.C. § 12–121, "Attorney fees are awardable if an appeal does no more than simply invite an appellate court to second-guess the trial court on conflicting evidence, or if the law is well settled and appellant has made no substantial showing that the district court misapplied the law." *Johnson v. Edwards*, 113 Idaho 660, 662, 747 P.2d 69, 71 (1987). While appellants assert legal errors on appeal, their argument essentially raises only factual issues upon which there was disputed evidence before the trial court. The trial court's factual findings are supported by substantial competent evidence, including extensive testimony from Harley Wade, Robert Wesely, and the parties to the lawsuit, as well as surveys, aerial photos, snapshots and motion pictures. Accordingly, we deem this to be an appropriate case to award attorney fees.

Affirmed. Costs and attorney fees to respondents.

HUNTLEY and JOHNSON, JJ., concur.

SHEPARD, J., sat, but did not participate due to his untimely death.

---

# ATTACHMENT A

STATE HIGHWAY NO. 21

HANEY/HALEY
&
PET HAVEN
CEMETERY

SKELTON/BONAR

Driveway

THE MODROOS

Driveway

N

⬛ ORIGINAL EASEMENT DEEDED TO PREDECESSORS OF MODROOS

⬛ PET HAVEN LANE (SKELTON/BONAR EASEMENT)

⬛ DISPUTED EASEMENT BOUNDARIES

This sketch is for location purposes only.

BISTLINE, Justice, concurring and dissenting.

I concur in the majority opinion in all respects other than the award of attorney fees on the appeal. When this Court legislated into effect the award of attorney fees on appeals, *Minich v. Gem State Developers*, 99 Idaho 911, 591 P.2d 1078 (1979), I cast my vote with Justice Donaldson in opposition to such unwarranted usurpation of legislative authority. Today the Court "deems this to be an appropriate case to award attorneys fees" on the appeal. If the Court had constitutional authority to make such an award, then I, too, would find this case appropriate. But, fortunately, the only "authority" which the Court has is that which it conferred on itself ten years ago in the *Minich* case.

The *Minich* case on the issue of attorney fees was a three to two decision which once again established that three votes on this Court can do anything—whether right or wrong. Unlike questions of law for which there is ordinarily precedent, the issue in *Minich* was whether or not this Court would experiment by taking unto itself the power for awarding attorneys fees which the legislature had extended to the trial courts, of which this Court is not one. See discussions by Donaldson, J. and Bistline, J. in *Minich*, 99 Idaho 911, 591 P.2d 1078.

The Court membership presently includes only one of the three 1979 members who cast votes for awarding attorney fees on appeals. It is an appropriate time to reconsider. What we know now is that where attorney fees are awarded by a trial court, that same trial court also is the forum where a contest over the reasonableness of the fees will be decided; in essence there can be a separate trial on the issue whereat the parties can submit the testimony of expert witnesses either by affidavit or live in the courtroom.

An appellate court simply is not adaptable to converting itself into a trial court, nor should it be inclined to do so. Recently, when this Court held a losing party liable for attorney fees, the prevailing party submitted a billing in excess of $35,000 for defending a frivolous appeal. While a trial judge could bring the parties before the court and conduct a regular trial on the billable hours claimed, and the charges for those billable hours, this Court has no such machinery in place. Yet, it came up with an answer. The amount involved, $35,000, was undoubtedly greater than most actions instituted in the district courts. This Court sans any testimony by experts or by the attorneys involved, issued a ruling. How valid was it?

The Court was acting beyond its powers in 1979 in its *Minich* decision. Time and experience have proven the fallacy in the experiment. This Court is not able to competently and correctly deal with contested amounts where it has declared one party entitled to attorney fees to be paid by the other party.

As a result, when this Court passes judgment on the amount to be awarded, at least this one member of the Court presently believes that the Court is apt to be wrong as it is apt to be right. But, back of it all, ten years of reflection and experience have been convincing that the two justices who voted against the Court's usurpation of legislative power made no mistake. The recent case which I mention, although not by name, is a good example of the morass into which the Court has fallen.

At one time, going on sheer recollection, the Court in remanding called upon the trial courts to conduct hearings on amount and reasonable expenditure of hours. That procedure would be an improvement. But, looking at the overall picture, it was a big mistake for the Court through a bare majority to place itself in the awkward position of assessing a parties' appeal as frivolously taken or frivolously defended, and thereafter passing on the validity of the fee bill which is submitted.