819 P.2d 575

**Charlotte M. COZZETTO, Plaintiff–Respondent,**

v.

**Ronald WISMAN, Defendant–Appellant.**

**No. 18327.**

Court of Appeals of Idaho.

Oct. 30, 1991.

Harvey Richman, Coeur d'Alene, for defendant-appellant.

Scott W. Reed, Coeur d'Alene, for plaintiff-respondent.

SWANSTROM, Judge.

As a result of a real estate transaction, the seller, Charlotte Cozzetto, sued the buyer, Ronald Wisman, for money claimed owing based on unjust enrichment and other equitable theories. Trial was held without a jury. The district court found for Charlotte Cozzetto and concluded that Wisman had been unjustly enriched in the amount of $16,000. Wisman appeals from the order of the district court entering judgment for Cozzetto. We affirm.

The issues on appeal are: (1) whether the district court's findings of fact are supported by substantial evidence; and (2) whether it was error for the court to use the equitable remedy of subrogation. Additionally, Cozzetto requests attorney fees on appeal.

In order to fully understand the salient facts, background information is necessary.

George and Ethel Taylor owned three contiguous lots fronting Hayden Lake in Kootenai County. On county records the three lots were designated: Tax No. 8427 and Lots 1 and 2, Block D, Second Addition to Taylor's Terrace. In 1976, Cozzetto and her husband, Joseph, purchased Lot 1 and Tax No. 8427 under a title-retaining contract with the Taylors (the Taylor contract). Prior to this transaction, Joseph had purchased Lot 2 from the Taylors, which was not similarly encumbered. When the Cozzettos were divorced in 1982, Charlotte was awarded the three lots. However, Joseph later repurchased Tax No. 8427 from Charlotte. In addition, Joseph agreed to make the monthly payments owing on the Taylor contract, on Lot 1 and Tax No. 8427. Joseph was thus making payments to Ethel Taylor, who succeeded her late husband. These payments partly covered land owned by Charlotte, that is, Lot 1.

On August 13, 1986, Joseph sold Tax No. 8427, which was described only in metes and bounds, to Wisman. Wisman agreed to assume the unpaid balance owed on the Taylor contract, secured by Tax No. 8427 and Lot 1 and to make payments to the escrow holder.[1]

Also in 1986, Cozzetto listed Lots 1 and 2 for sale. Cozzetto and Wisman met in August, 1986, after Wisman moved into the house on Tax No. 8427. That fall, Cozzetto moved to Arizona. In January, 1987, Wisman telephoned her and inquired about purchasing Lots 1 and 2. Pursuant to that conversation, on February 9, 1987, Wisman prepared an offer to purchase Lots 1 and 2 for $75,000, contingent upon his obtaining financing from First Federal Savings and Loan in the amount of $60,000. On February 13, 1987, Cozzetto prepared a counter offer which Wisman accepted. Cozzetto's counter offer increased the total sale price to $77,500, to be paid as follows: $60,000 from the proceeds of a first note and trust deed to be obtained by Wisman, and the balance of $17,500 to be paid by Wisman, who would execute a trust deed and note in favor of Cozzetto, over a term of twenty years at eight percent interest. Closing was scheduled for April 20, 1987.

For Wisman's loan application, First Federal required an appraisal, which was conducted March 4, 1987, valuing the property at $85,000. The parties agreed to a below-market price because no real estate agent was involved and a broker's fee would not be paid. The appraisal recommended two repairs consisting of a new pump and drain to the community water system and the elimination of some wood-to-dirt contact near the foundation. Based upon a closing date of April 20, 1987, First Federal committed to an adjustable rate loan with eight percent interest. Wisman telephoned Cozzetto in Arizona and instructed her to return to Coeur d'Alene for the April 20 closing. Upon her arrival, Cozzetto learned about the Taylor contract on Lot 1, apparently for the first time. Cozzetto also learned for the first time that Wisman in his purchase of Tax No. 8427 from Joseph had agreed to assume and pay the balance owing on the Taylor contract. Because of the encumbrance on Lot 1, and the fact that Ethel Taylor refused to release Lot 1 from that lien, the closing date of April 20 for the sale of Lots 1 and 2 was cancelled. In her efforts to obtain a release from Ethel Taylor, Cozzetto hired an attorney, whose employment resulted only

1. The real estate contract between Joseph and Wisman referred to the Taylor contract debt which Wisman assumed as,

> that certain indebtedness to FIRST INTERSTATE BANK of Spokane, Washington, in the current balance of *$19,103.41* with interest accruing at the rate of EIGHT PERCENT (8%) per annum with payments due of ONE HUNDRED FIFTY DOLLARS ($150.00) per month with the first payment due on or before September 5, 1986.

Nothing in the real estate contract, the deed, or any other document, indicated that this indebtedness encumbered two parcels. It appears that Wisman did not learn from a title report the extent of the encumbrance, nor did he investigate the Taylor obligation on his own in order to discover the scope of the security encumbered by that obligation. Apparently, Wisman was unaware that the Taylor contract debt applied not only to Tax No. 8427, which Wisman was purchasing, but also to Lot 1, which was owned by Cozzetto. Cozzetto also was unaware of the fact that the Taylor contract debt still encumbered Lot 1. She thought she owned Lots 1 and 2 free and clear pursuant to the property settlement with her former husband.

in an oral commitment from Ethel Taylor to discount the balance on the Taylor contract to $16,000, although the actual balance was approximately $19,000.

The record reflects that while Joseph and Charlotte Cozzetto were married, Joseph handled the couple's business and real estate transactions and that Charlotte was generally unfamiliar with such matters. In contrast, Wisman was an accountant who had worked in various businesses, including his own bookkeeping, accounting and tax business. After Cozzetto returned to Arizona following the unsuccessful closing, Wisman suggested that $16,000 could be taken from the First Federal loan proceeds and paid to Ethel Taylor at closing thereby clearing the title. Cozzetto agreed to this arrangement assuming that after the closing Wisman would simply pay her the monthly installments he had been paying to Ethel Taylor. The sale closed on May 27, 1987. A month later, when Cozzetto did not receive any payment from Wisman she contacted Joseph, and then Wisman. Wisman informed Cozzetto that the Taylor contract had been paid by Cozzetto at closing and that he had the deed, implying that he did not intend to make any payments to her. Thereafter Cozzetto filed this action. In February, 1988, Joseph assigned any rights he had to payments from Wisman on the Taylor contract to Cozzetto.

The district court held that Cozzetto and Wisman had not renegotiated their contract and that Cozzetto had not agreed to pay the Taylor contract to relieve Wisman of that obligation. The court concluded that Wisman was unjustly enriched in an amount of $18,294.11. The court also found that the key motivation behind the May 27, 1987, closing and the $16,000 payment by Cozzetto was Wisman's earlier telephone call urging the closing and suggesting that Cozzetto pay Ethel Taylor. The court explained Wisman's unjust benefit came from using Cozzetto's money to pay his own obligation. The court then fashioned a remedy under subrogation principles, whereby Cozzetto was subrogated to the rights of Ethel Taylor to the extent of $16,000. This amount was to accrue interest at eight percent commencing on May 27, 1987, payable in monthly installments of principal and interest.

Wisman contends that the district court ignored oral modifications of the contract which constituted a renegotiation. Wisman offers the following circumstances as evidence of the alleged renegotiation: the costs of the repairs pursuant to the appraisal were shared, instead of paid outright by the buyer; Cozzetto was under pressure to close because she was in the process of buying a house in Arizona, and needed cash to close on that deal; the parties recognized a boundary dispute between Tax No. 8427 and Lot 1; and Cozzetto agreed to pay the Taylor contract because of Wisman's representations regarding increased interest due to the later closing date.

Wisman, in his brief, re-argues the facts of the case in an effort to persuade us that the district court erred in its determination that no renegotiation of the contract had occurred and erred in its judgment for Cozzetto based on unjust enrichment. Wisman further contends that subrogation was an improper remedy. Cozzetto responds that all of the factors Wisman raises as support for the alleged renegotiation are merely forms of contrived after-the-fact consideration in an effort to avoid the "ultimate conclusion" that the $16,000 payment had not been negotiated. In reply to Wisman's argument on subrogation Cozzetto contends that such a remedy is well within the broad equitable powers of the court.

■ We now turn to the first issue raised: whether the district court's findings are supported by the evidence. Idaho Rule of Civil Procedure 52(a) provides that findings of fact by a court are binding on appeal unless clearly erroneous. Furthermore, findings of fact will not be overturned on appeal if they are supported by substantial and competent, though conflicting evidence. *Tippett v. Bayman*, 105 Idaho 744, 747, 672 P.2d 1074, 1077 (Ct.App. 1983) (citing *Ellis v. Northwest Fruit & Produce*, 103 Idaho 821, 654 P.2d 914 (1982)). Where appellant challenges the findings of fact, the appellant has the bur-

den of showing error, and the evidence will be viewed in a light most favorable to the respondent. *Salazar v. Tilley,* 110 Idaho 584, 587, 716 P.2d 1356, 1359 (Ct.App.1986). In addition, the credibility of each witness is determined by the trier of fact and deference in that determination will be afforded to the trial court. *Id.*

We now examine the facts alleged by Wisman as constituting a renegotiation of the contract and the findings of fact by the district court. Rather than update the existing water system, Wisman and Cozzetto agreed, because of Wisman's preference to have separate water systems for each lot, to install a new water system, and Cozzetto agreed to pay one-half of the cost. Cozzetto testified that she had agreed to this as a result of her intent to be "congenial" because Wisman had a similar water system on the lot he already owned, Tax No. 8427. Wisman also attempts to place significance on the fact that Cozzetto was trying to buy a house in Arizona. Cozzetto's testimony reveals that after April 20, 1987, when her sale to Wisman did not close, she contacted the seller in Arizona to ask for a three-week extension on the closing in Arizona. Cozzetto testified that after the seller in Arizona refused, she yielded her earnest money and gave that abandoned transaction no further consideration with regard to her dealings with Wisman.

Wisman also contends that a renegotiation of the contract occurred in light of a boundary dispute. Neither party had the property surveyed and no evidence of a survey was offered, although Cozzetto did admit that an old cabin straddled the property line between Lot 1 and Tax No. 8427. Cozzetto never admitted to that being a problem, however, and further stated that she would tear the structure down if it constituted an obstacle to the sale for Wisman. This shows that she did not think it a material problem and at no point in the record did she agree to pay more money to take care of this "problem," nor does Wisman point to any fact indicating such agreement.

Wisman's final contention supporting his claim of the existence of a renegotiation of the contract is that in order to borrow the $60,000, he would have to pay a higher interest rate due to the cancellation of the initial closing. Wisman informed Cozzetto that this would result in increased interest over the life of the loan. Although Cozzetto believed Wisman's representations regarding the increased interest as true, the court found that she did not agree to pay the Taylor contract for Wisman's benefit. Wisman further testified that he had informed Cozzetto that the increased interest approximated the balance on the Taylor contract and, in order to complete the sale, Cozzetto agreed to pay the Taylor contract in consideration for the increase in interest. However, Cozzetto testified that Wisman never told her that the increase over the thirty-year term would approximate the balance on the Taylor contract. Because Cozzetto denied the facts supporting Wisman's contention that the parties had renegotiated the contract, there was conflicting evidence upon the issue. We will not second guess the court on credibility and weight of the evidence issues.

Because there is competent, although conflicting, evidence that Cozzetto did not renegotiate the contract and agree to pay Wisman's obligation on the Taylor contract, we are obligated to accept the court's finding of fact on this matter. *Tippett v. Bayman, supra.* Upon review of the testimony, we determine that the court's finding, that no renegotiation of the contract had occurred, is supported by competent and substantial evidence and is not clearly erroneous. Based on the court's conclusion that no renegotiation of the contract occurred, it follows that there was no express agreement covering the subject matter in dispute, and therefore, unjust enrichment is readily available. *Marshall v. Bare,* 107 Idaho 201, 205, 687 P.2d 591, 595 (Ct.App.1984).

As the trial court noted, one who has been unjustly enriched at the expense of another must make restitution to the other. *Smith v. Smith,* 95 Idaho 477, 511 P.2d 294 (1973). In *Hertz v. Fiscus,* our Supreme Court stated that one acting under her own mistake may be entitled to

restitution in the case of unjust enrichment. 98 Idaho 456, 457, 567 P.2d 1, 2 (1977) (citing Restatement of Restitution §§ 53(3), 59 (1936)). In determining that Wisman was unjustly enriched, the court stated:

> [Wisman] contracted to buy Lots 1 and 2 from Charlotte for $77,500. He contracted to buy Tax No. 8427 from Joseph for $60,000, including his assumption of the $19,103.41 debt owed to [Ethel] Taylor. Circumstances arose where Charlotte, at the suggestion of Wisman, felt compelled to satisfy the Taylor debt out of Wisman down payment funds in order to allow her deal with the defendant to close. If one concludes, as defendant contends, that he has paid Charlotte in full and he no longer has an assumption obligation regarding the Taylor debt, he will be able to close his contracts with Joseph and Charlotte at a savings of more than $16,000 because of Charlotte's payment.

The court also went on to point out that Cozzetto did not intend to confer any gift to Wisman, but she paid the Taylor contract due to great pressure from Wisman. Wisman responded that he had agreed to pay Cozzetto $77,500 for clear title. As the court noted, however, Wisman's argument ignores the fact that Wisman had previously assumed Joseph's obligation to pay the Taylor contract. As we noted in *Pichon v. L.J. Broekemeier, Inc.*, the plaintiff in an unjust enrichment action need not show that the defendant was guilty of any wrongdoing. 108 Idaho 846, 849, 702 P.2d 884, 887 (Ct.App.1985) (citing *Hixon v. Allphin*, 76 Idaho 327, 281 P.2d 1042 (1955)). All that need be shown is that the defendant obtained something of value to which he was not entitled, to the detriment of another. *Pichon v. L.J. Broekemeier, Inc.*, *supra*.

■ Wisman further contends that the remedy of subrogating Cozzetto to the rights of Ethel Taylor and/or Joseph is error. Wisman states that because the Taylor contract was paid, such a remedy is in effect a nullity. Wisman, however, cites no authority for the proposition that subrogation was improper. Wisman also contends that once the Taylor contract was paid in May, 1987, Joseph had no right to

enforce his contract with Wisman and, furthermore, had no contract rights to assign to Cozzetto in 1988.

■ We agree with the view set forth by Cozzetto, that the theory of unjust enrichment mandates an equitable remedy to the extent justice requires. Subrogation derives from the equitable power of courts and it should be administered to ensure real and essential justice without regard to form. *Houghtelin v. Diehl*, 47 Idaho 636, 639, 277 P. 699, 700 (1929); *see also* 27 Am.Jur.2d *Equity* § 103 (1966). Wisman's argument that subrogation is inapplicable has no merit. Furthermore, one can be subrogated "to the rights or securities of a creditor [only once] the claim of the creditor against the debtor has been paid in full." *Houghtelin v. Diehl*, 47 Idaho at 640, 277 P. at 700 (citations omitted).

■ The proper recovery in an unjust enrichment action is the measure of the benefit received which if allowed to be retained would be unjust. *Marshall v. Bare*, 107 Idaho at 205, 687 P.2d at 595 (citing *Nelson v. Gish*, 103 Idaho 57, 644 P.2d 980 (Ct.App.1982)). We note that this was the basis for recovery, and that it would be unjust for Wisman to retain the benefit of the payment on the Taylor contract he received from Cozzetto. *See Hertz v. Fiscus*, *supra*. The determination of the amount is a factual issue within the discretion of the court, *Nelson v. Gish*, *supra*, but Wisman challenges only the nature of the subrogation remedy, and not the specific amount.

■ In her brief, Cozzetto requests attorney fees on appeal. She contends that this appeal essentially raises only factual issues upon which the district court was presented with disputed evidence. The main challenge presented by Wisman is that the court erred in its factual finding that no renegotiation occurred. The only other issue raised by Wisman is that subrogation was an improper remedy. Once the court held that Wisman was unjustly enriched, it was clear that Cozzetto would recover the amount Wisman unjustly received. Wisman's challenge to the remedy is merely one of form. We have already

held that Wisman's subrogation argument has no merit. We accept Cozzetto's argument and hold that Wisman essentially challenges only the court's factual findings upon which there was disputed evidence. *See Skelton v. Haney,* 116 Idaho 511, 777 P.2d 733 (1989). Appellant has made no convincing showing that the district court misapplied the law. Under these circumstances, respondent is entitled to an award of attorney fees on appeal. I.C. § 12–121; *Johnson v. Edwards,* 113 Idaho 660, 662, 747 P.2d 69, 71 (1987); *Davis v. Gage,* 109 Idaho 1029, 1031, 712 P.2d 730, 732 (Ct. App.1985).

We affirm the judgment for Charlotte Cozzetto based on unjust enrichment. We also conclude that the district court did not err in characterizing the remedy as subrogation. Costs and attorney fees on appeal are hereby awarded to respondent, Charlotte Cozzetto.

WALTERS, C.J., and SILAK, J., concur.