**In re ACEQUIA, INC., an Idaho Corporation, Debtor.**

**ACEQUIA, INC., an Idaho Corporation, Plaintiff–Appellee,**

v.

**Vernon B. CLINTON, Defendant–Appellant,**

**and**

**Rosemary Haley, Defendant–Appellee.**

**ACEQUIA, INC., an Idaho Corporation Plaintiff–Appellant,**

v.

**Vernon B. CLINTON; Rosemary Haley, Defendants–Appellees.**

**Nos. 93–35411, 93–35412.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1994.

Decided Aug. 31, 1994.

David M. Penny and Stanley W. Welsh, Cosho, Humphrey, Greener & Welsh, Boise, ID, for defendant-appellant-appellee.

Jim Jones, Boise, ID, and Steven D. Cundra, Thompson, Hine and Flory, Washington, DC, for plaintiff-appellee-appellant.

Robert C. Huntley, Givens, Pursley, Webb & Huntley, Boise, ID, for defendant-appellee.

Before GOODWIN, NELSON, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

In this case, we consider issues arising from chapter 11 debtor Acequia, Inc.'s ten-year effort to recover certain prebankruptcy conveyances made to Vernon Clinton, founder and former controlling shareholder of the corporation. Clinton appeals the magistrate judge's determination that he fraudulently transferred Acequia's assets to himself. Acequia, now under the control of adverse parties, cross-appeals the magistrate judge's calculation of Clinton's liability for the transfers.

Resolution of the multitude of issues in this case requires consideration of the common law of restitution, Idaho's community-property law, the equitable doctrine of setoff, and, most importantly, the fraudulent conveyance provisions of both the Bankruptcy and Idaho Codes. We scrutinize each doctrine and, ultimately, conclude the magistrate judge correctly determined that Clinton made transfers with an actual intent to hinder and delay Acequia's creditors. We hold, however, that the magistrate judge erred by limiting Acequia's recovery of the fraudulent transfers to the amount of unsecured claims against the bankruptcy estate. Accordingly, we affirm in part, reverse in part, and remand.

## I.

In 1974, while married to Rosemary Haley, Vernon Clinton formed Acequia, Inc., a Subchapter S family corporation, to conduct farming and management operations on his land in Idaho. In 1981, Clinton and Haley divorced and, pursuant to a marital settlement agreement, each took fifty-percent ownership of the corporation. Acequia filed a petition under chapter 11 of the Bankruptcy Code the following year. Shortly thereafter, Haley and several creditors requested the bankruptcy court to appoint a trustee, alleging that Clinton had failed to disclose material information in Acequia's bankruptcy schedules and had engaged in blatant mismanagement. In response, Clinton eventually gave an irrevocable voting proxy to Haley, who took control of the corporation.

In 1984, Acequia confirmed a plan of reorganization over Clinton's objection. Both the district court and the Ninth Circuit subsequently affirmed. *See Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352 (9th Cir.1986) [*Acequia I*]; *see also Clinton v. Acequia, Inc. (In re Acequia, Inc.)*, No. 91–36176, 996 F.2d 1223 (9th Cir. June 21, 1993) (mem.) (affirming the bankruptcy court's denial of Clinton's motion to terminate the plan) [*Acequia II*]. Led by Haley, Acequia then commenced an eleven-count action in bankruptcy court, seeking to recover as fraudulent certain prepetition transfers the corporation made to Clinton.

After the district court withdrew reference to the bankruptcy court, the parties consented to adjudication by magistrate judge. The magistrate judge conducted a two-month bench trial and rendered judgment in favor of Acequia on several counts and in favor of Clinton on one counterclaim. In total, the magistrate judge entered a final judgment against Clinton for $233,346.72 plus prejudgment interest, with an allowed deduction against Acequia of $117,000.00 plus prejudgment interest. Both parties appeal.

## II.

Section 548 of the Bankruptcy Code empowers a bankruptcy trustee to recover "fraudulent transfers" made by the debtor within one year of the bankruptcy petition:

(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor ...

(1) made such transfer ... with *actual intent to hinder, delay, or defraud* any entity to which the debtor was or became, on or after the date that such transfer was made ..., indebted....

11 U.S.C. § 548(a)(1) (emphasis added). Under section 548(a)(1), "[t]he transfer of any interest in the property of a debtor, within one year of the filing of a petition in bankruptcy, is voidable by the trustee in bankruptcy if the purpose of the transfer was to prevent creditors from obtaining satisfaction of their claims against the debtor by removing property from their reach." *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir.1991).

As a debtor-in-possession, Acequia invoked section 548 on its own behalf,[1] alleging in Counts I through IV and parts of Count IX

---

1. Section 1107(a) of the Bankruptcy Code empowers a debtor-in-possession to use the trustee's statutory authority to recover fraudulent transfers. *See* 11 U.S.C. § 1107(a); *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1491 n. 5 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993); *Verco Indus. v. Spartan Plastics (In re Verco Indus.)*, 704 F.2d 1134, 1137 (9th Cir.1983).

of its complaint that Clinton received fraudulent transfers within the scope of the statute. The magistrate judge analyzed the relevant transfers from Acequia to Clinton by tracing the funds "to determine if the money was used by Clinton for personal purposes, as alleged [by Acequia], or if the money was returned to Acequia [as claimed by Clinton]." Ultimately, the magistrate judge concluded that Acequia could recover $118,367.97 as fraudulently transferred within the meaning of section 548(a)(1):

> The transfer the Court is concerned with is the transfer of Acequia funds to Clinton's personal name. *Such transfers could not help but hinder and delay payment to Acequia's creditors[,] a fact Clinton would certainly have been aware of as the Chief [O]perating [O]fficer of the corporation in charge of all books and records.* By then Acequia had missed the two principal payments due to Prudential [a secured creditor] on March 15; 1979 and 1980. Clinton was negotiating a settlement with Prudential to fend off a foreclosure action. Other suits were pending involving KLW [another creditor] and its operation of [Clinton's] ranch. The bankruptcy filing was imminent and[,] when filed[,] Clinton only listed cash from which Acequia could meet its debts in the amount of $2,000.00. Clinton has not attempted to explain the transfer[s] other than that the funds were used for personal expenses. Therefore, Clinton will be required to return the funds to Acequia as the transfer[s] hindered and delayed Acequia creditors.

(emphasis added). On Clinton's motion for reconsideration, the magistrate judge clarified his analysis:

> ... The Court agrees with Clinton that[,] if the sole indicia of fraud was that Clinton personally used the funds[,] that Acequia did not meet its burden of proof. However, the Court found and sets forth more clearly at this point, that *Acequia presented evidence that by the beginning of 1981 numerous badges of fraud existed which shifted the burden of proof to Clinton to explain or uphold the transfer.* It was Clinton's sole explanation that the funds were used for personal expenses that [led] this Court to find that Clinton had

not met his burden of proof to explain the transfer.

(emphasis added) (citation and footnotes omitted).

**A.**

■ We review for clear error the magistrate judge's factual determination that Clinton intended to hinder and delay Acequia's creditors. *E.g., Harman v. First Am. Bank (In re Jeffrey Bigelow Design Group, Inc.),* 956 F.2d 479, 481 (4th Cir.1992) ("For a finding of fraudulent intent in an actual fraudulent transfer, a reviewing court must apply a clearly erroneous standard."); *Gough v. Titus (In re Christian & Porter Aluminum Co.),* 584 F.2d 326, 335 (9th Cir.1978); 4 *Collier on Bankruptcy* ¶ 548.02[5] at 548–49 n. 62 (15th ed. 1994) ("A finding of a trial judge, ... who has heard the oral testimony that a transfer has or has not been effected with actual fraudulent intent, is undoubtedly entitled to great weight on appeal in view of the peculiar importance in section 548(a)(1) cases of the witness examined on the intent issue.") [*Collier* ]. Applying this deferential standard of review, we affirm the magistrate judge's holding that Clinton is liable for fraudulent transfers in violation of section 548(a)(1).

**B.**

Clinton argues that, instead of intending to defraud Acequia's creditors, he considered the corporate conveyances to be personal loans or, alternatively, reimbursement for living expenses in lieu of salary. Uniquely, Clinton grounds this contention in his complete failure to observe corporate formalities and his consistent. treatment of Acequia "merely as an extension of himself."

■ We cannot agree. Although novel, Clinton's "white heart, empty head" argument ignores the use of circumstantial "badges of fraud" in fraudulent transfer cases:

> It is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors. Therefore, as is the case under the common law

of fraudulent conveyance, courts applying Bankruptcy Code § 548(a)(1) frequently infer fraudulent intent from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud.

Among the more common circumstantial indicia of fraudulent intent at the time of the transfer are: (1) *actual or threatened litigation against the debtor;* (2) a purported transfer of all or substantially all of the debtor's property; (3) *insolvency or other unmanageable indebtedness on the part of the debtor;* (4) *a special relationship between the debtor and the transferee;* and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer.

The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent "significantly clear" evidence of a legitimate supervening purpose.

*Max Sugarman,* 926 F.2d at 1254–55 (emphasis added) (citations and additional emphasis omitted). *Accord, e.g., Hayes v. Palm Seedlings Partners (In re Agricultural Research & Technology Group, Inc.),* 916 F.2d 528, 534–35 (9th Cir.1990); *Kupetz v. Wolf,* 845 F.2d 842, 846 (9th Cir.1988). Thus, once a trustee establishes indicia of fraud in an action under section 548(a)(1), the burden shifts to the transferee to prove some "legitimate supervening purpose" for the transfers at issue.

■ As the magistrate judge noted, several badges of fraud exist in this case. At the time of the transfers at issue, lawsuits were pending, Acequia's bankruptcy filing was imminent, and Clinton maintained total control over the corporation's finances. Moreover, Clinton produced no documentation, other than ambiguous check memo-line notes, to confirm his "innocent" explanations for the transactions. These facts support an inference of actual fraudulent intent. *See Max Sugarman,* 926 F.2d at 1255 (fraudulent in-

tent is properly inferred where debtors transferred assets "to two entities entirely owned and controlled by a judgment creditor with whom the debtors had long had an intimate financial relationship [and where] [t]he transfers were effected nine months before involuntary bankruptcy, while [the debtors] were in desperate financial condition"); *Consove v. Cohen (In re Roco Corp.),* 701 F.2d 978, 984 (1st Cir.1983) ("We may impute any fraudulent intent of [the transferee] to the transferor [the debtor] because, as the company's president, director, and sole shareholder, he was in a position to control the disposition of its property."); *Nordberg v. Republic Nat'l Bank (In re Chase & Sanborn Corp.),* 51 B.R. 739, 740–41 (Bankr.S.D.Fla. 1985) ("The extensive and often circuitous movement of funds among the several entities controlled by [the debtor's principal], to his personal benefit and in this instance to the benefit of a . . . relative, and to the injury of the debtor, coupled with the facts that the records of these transactions are in general disarray and no exculpatory explanation has been offered, . . . [establish an] actual[ ] intent to hinder, delay and defraud this debtor's creditors."); *Collier, supra* pages 10015–16, ¶ 548.02[5] at 548–41 to 548–46 ("Circumstances from which courts have been willing to infer fraud include . . . a transfer for no consideration where the transferor and the transferee have knowledge of the claims of creditors and know the creditors cannot be paid . . . [and] the fact that the transferee was an officer or was an agent or creditor of an officer of an embarrassed corporate transferor . . . .") (collecting cases).

The fact that Clinton never documented Acequia's "loans" or "salary payments," and filed bankruptcy schedules and tax returns that made no reference to these transfers, supports the magistrate judge's determination that Clinton failed to rebut the circumstantial inference arising from the "badges of fraud." Accordingly, we affirm the magistrate judge's conclusion that Clinton received fraudulent transfers in violation of section 548(a)(1).[2]

---

**2.** Clinton argues that he cannot be liable for fraudulent conveyances because the transfers did not prejudice Acequia's creditors. Aside from being factually questionable (the magistrate

judge concluded that "[t]here is no question that the withdrawals occurred and that creditor[s] (both secured and unsecured), . . . were harmed . . . ."), Clinton's contention is legally in-

### III.

Section 544 of the Bankruptcy Code empowers a bankruptcy trustee to invoke state law to recover the debtor's prepetition transfers:

> The trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under ... this title.

11 U.S.C. § 544(b). Because section 548(a)(1) applies only to transfers made within one year of a bankruptcy petition, the magistrate judge used section 544(b) to analyze Acequia's conveyances to Clinton made more than one year prior to the corporation's bankruptcy. *See Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 593 (9th Cir.1991) (using section 544(b) to apply state fraudulent conveyance law); *Agricultural Research*, 916 F.2d at 534 (same); *Kupetz*, 845 F.2d at 845 (same). Specifically, the magistrate judge invoked section 544(b) to apply Idaho Code section 55–916, a state-law analog of section 548(a)(1):

> *Conveyance made with intent to defraud—* Every conveyance made ... with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

Idaho Code § 55–916 (superseded in 1987 by § 55–913(1)(a)). However, reasoning that Acequia's avoidance rights under section 544(b) derive from those of its unsecured creditors, the magistrate judge limited the corporation's section 544(b) recovery to the total amount of unsecured claims against the bankruptcy estate. In total, the magistrate judge found Clinton liable for an additional

$64,000 under this provision. Both parties appeal.

### A.

Clinton argues that Acequia's entire section 544(b) action is now moot because the corporation paid all unsecured creditors in its plan of reorganization and thereby nullified any foundation for application of the statute. In support, Clinton recites the axiomatic proposition that, "[i]n seeking recovery of [ ] monies [under section 544(b) ], the trustee stands in the overshoes of the debtor corporation's unsecured creditors," *Agricultural Research*, 916 F.2d at 534. We reject Clinton's argument for several reasons.

First, the existence of a section 544(b) cause of action "depends upon whether ... a creditor existing at the time the transfers were made ... still had a viable claim against [the] debtor *at the time the bankruptcy petition was filed.*" *Karnes v. McDowell (In re McDowell)*, 87 B.R. 554, 558 (Bankr.S.D.Ill.1988) (emphasis added) (holding that a bankruptcy petition tolls the statute of limitations on a creditor's state-law fraudulent conveyance action and permits the trustee to initiate avoidance litigation even where the limitations period otherwise would have expired). *See generally Collier, supra* pages 10015–16, ¶ 544.03[2] at 544–21 to 544–22. In this case, unsecured creditors clearly held claims against Acequia when it filed the bankruptcy petition.

Second, section 1123(b) of the Bankruptcy Code authorizes postconfirmation pursuit of a debtor's bankruptcy causes of action. *See* 11 U.S.C. § 1123(b)(3)(B) ("a plan may ... provide for ... the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any ... claim or interest");

correct: "A party to a transaction calculated to defraud creditors cannot seriously contend that the property is worthless to creditors seeking recovery, or that the transfer has not otherwise injured them." *Collier, supra* pages 10015–16, ¶ 548.02[4] at 548–38 to 548–39 (collecting cases). The magistrate judge found *intent* to hinder or delay creditors; actual hindrance or delay is unnecessary to attach liability.

The case Clinton cites for support, *Melamed v. Lake County Nat'l Bank*, 727 F.2d 1399 (6th

Cir.1984), is inapposite. In *Melamed,* the court merely held that fraudulent conveyance liability does not exist where a creditor obtains payment of its *secured* claim because such payment "does not diminish the assets of the debtor which [a]re available to its creditors." *Id.* at 1402. In this case, on the other hand, Acequia's transfers to Clinton clearly depleted the corporation's assets and thereby lessened funds available to the unsecured creditors.

*Citicorp Acceptance Co. v. Robison (In re Sweetwater),* 884 F.2d 1323, 1327 (10th Cir. 1989) (representative designated in a confirmed plan of reorganization may assert section 544(b) "as a claim of the estate for purposes of § 1123(b)(3)(B)"); *In re Consolidated Capital Equities Corp.,* 143 B.R. 80, 85 (Bankr.N.D.Tex.1992) (same). In this case, Acequia's plan of reorganization specifically contemplated that, after confirmation, the corporation would continue to "litigate claims and causes of action which exist in favor of the Debtor arising prior to and subsequent to the commencement of the Debtor's Chapter 11 case." If the confirmation of a plan of reorganization and subsequent payment of creditors sufficed to eliminate section 544(b) causes of action, both section 1123(b)(3)(B) and the litigation-enabling provision of Acequia's plan would be pointless. *See Duvoisin v. East Tenn. Equity Ltd. (In re Southern Indus. Banking Corp.),* 59 B.R. 638, 642 (Bankr.E.D.Tenn.1986) ("[The] aim [of section 1123(b)(3)(B) ] was to *make possible the formulation and consummation of a plan before completion of the investigation and prosecution of causes of action such as those for previous insider misconduct and mismanagement of the debtor.* Thus, the statute was in furtherance of the purpose of preserving all assets of the estate while facilitating confirmation of a plan.") (emphasis added).

And, third, if confirmation and payment precluded application of section 544(b), debtors undoubtedly would delay filing plans of reorganization until completing all potential litigation, a result that would contravene the Bankruptcy Code's goal of quick and equitable reorganization. *Cf. Tennessee Wheel & Rubber Co. v. Captrol Corp. Air Fleet (In re Tennessee Wheel & Rubber Co.),* 64 B.R. 721, 727 (Bankr.M.D.Tenn.1986) ("Defendants' theory would not permit the administration of bankruptcy estates in the common situation ... where the general unsecured claimholders have accepted cash soon after confirmation, but other classes of creditors and interestholders await payment for months or years after confirmation.... [That result would conflict with] Chapter 11[, which] provides debtors with great flexibility in the design and execution of plans of reorganization."), *aff'd,* 75 B.R. 1 (M.D.Tenn.1987).

The two cases cited by Clinton are inapposite. In *Allard v. DeLorean,* 884 F.2d 464 (9th Cir.1989), we dismissed as moot the appeal of a bankruptcy trustee who had *settled* fraudulent conveyance litigation against the debtor: "[The trustee] is no longer a creditor in this action because ... [he] executed and filed a full satisfaction of judgment.... [He therefore] is not entitled to the remedy of setting aside [the debtor]'s conveyance ... as fraudulent ... [and] does not have an interest in the outcome of the appeal." *Id.* at 466 (citation omitted). In this case, on the other hand, Acequia continues to pursue section 544(b) claims against Clinton and most assuredly has an "interest in the outcome of the appeal." *Unsecured Creditors' Committee v. Banque Paribas (In re Heartland Chemicals, Inc.),* 103 B.R. 1012 (Bankr.C.D.Ill.1989), is similarly inapplicable. In that case, the court applied state law to determine that creditors could not "avoid a transaction where the debt owed at the time the bankruptcy petition was filed is not identical to the debt owed at the time of the challenged transaction." *Id.* at 1016. Clinton makes no such allegation in this case.

We therefore hold that Acequia may invoke section 544(b) despite the fact that it paid unsecured creditors in its confirmed plan of reorganization.

## B.

 Although determining that Acequia could in fact utilize section 544(b), the magistrate judge imposed a novel limitation on the corporation's recovery under the statute:

> In the normal situation, a debtor-in-possession is attempting to set aside fraudulent transfers so that assets can be brought back into the estate so that unsecured creditors can hopefully receive some percentage of their claims. Under such circumstances case law has applied the broad language in *Moore v. Bay* [284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931) ] ("for the benefit of the estate") so that the class of unsecured creditors will benefit from any recovery equally even if the action is brought on behalf of only one unsecured creditor so that the entire class of unse-

cured creditors can benefit. Such recovery rarely pays unsecured creditors fully. In this case the circumstances are such that the unsecured creditors, in whose shoes Acequia stands, were paid in full on the distribution date. Therefore, this Court will limit Acequia's standing, thus the right to recover for the benefit of the estate, to the amount of unsecured claims paid on the distribution date identified in the Plan of Reorganization....

We review *de novo* this question of statutory interpretation, *e.g., Ernst & Young v. Matsumoto (In re United Ins. Management, Inc.),* 14 F.3d 1380, 1383 (9th Cir.1994), and conclude that the magistrate judge erred by imposing a "cap" on Acequia's section 544(b) recovery.

### 1.

As noted above, section 544(b) places "the trustee [ ] in the overshoes of the debtor corporation's unsecured creditors." *Agricultural Research,* 916 F.2d at 534. *See Collier, supra* pages 10015–16, ¶ 544.03[1] at 544–17 ("Like Prometheus bound, the trustee is chained to the rights of creditors [when invoking section 544(b) ]."). This relationship does not support the magistrate judge's analysis, however, because the Bankruptcy Code "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." H.R.Rep. No. 595, 95th Cong. 1st Sess. 375 (1977).

■ Specifically, after demonstrating the *right* to recover conveyances under section 544(b), a trustee must then establish the *amount* of recovery under section 550(a) of the Bankruptcy Code, which provides that, "to the extent that a transfer is avoided under section 544 ..., the trustee may recover, *for the benefit of the estate,* the property transferred." 11 U.S.C. § 550(a) (emphasis added).

... [S]ection 550 specifies the conditions under which, once a transfer is avoided under section 544 or other provisions, a trustee can recover from various transferees. The legislative history explains that "Section 550 prescribes the liability of a transferee of an avoided transfer and enunciates the separation between the con-

cepts of avoiding a transfer and recovering from the transferee." There are, in effect, three conceptual steps to the trustee's case; the trustee must establish: 1) fraud or illegality under the applicable substantive law; 2) resulting voidness or voidability of the transfer under the applicable law so as to allow avoidance pursuant to 544(b); and 3) liability of the particular transferee pursuant to the provisions of section 550.

*Lippi v. City Bank,* 955 F.2d 599, 605 (9th Cir.1992) (citation omitted). Thus, "[w]hile the transfer or obligation must be voidable as against a creditor holding an allowable claim, *the measure and distribution of recovery is not limited by the creditor's right."* Collier, *supra* pages 10015–16, ¶ 544.03[1] at 544–17 n. 12 (emphasis added). *See Danning v. Miller (In re Bullion Reserve),* 922 F.2d 544, 546 n. 2 (9th Cir.1991) ("The theory under which a transfer has been avoided is irrelevant to the liability of the transferee against whom the trustee seeks to recover [pursuant to] Section 550....").

Under this statutory framework, the existence of a "triggering creditor" under section 544(b) gives the trustee an unlimited *right* to invoke state-law avoidance powers. The *extent* of the trustee's ability to exercise that right is, in turn, governed by section 550(a). For example, suppose a debtor makes four transfers of $10, each of which is avoidable under state law, and then files for bankruptcy, listing one unsecured creditor with a claim of $5. The unsecured creditor could recover any one of the four $10 avoidable transfers prior to bankruptcy and, as a result, *each* transfer is "voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b). After the debtor files a bankruptcy petition, section 544(b) gives the trustee the *right* to avoid *any* of the four transfers (which total $40) despite the fact that only $5 of unsecured claims exist. Section 550(a) governs the *extent* to which the trustee may exercise that right, specifically permitting recovery "for the benefit of the estate." *Id.* § 550(a).

■ The case law recognizes this distinction. As several courts have noted, under section 544(b) "[a] transaction that is voida-

ble by a single, actual unsecured creditor may be avoided in its entirety, regardless of the size of the creditor's claim." *Harris v. Huff (In re Huff)*, 160 B.R. 256, 261 (Bankr. M.D.Ga.1993). *Accord, e.g., Abramson v. Boedeker*, 379 F.2d 741, 748 n. 16 (5th Cir. 1967) ("[I]f the transfer is avoidable at all by any creditor, it is avoidable in full for all creditors regardless of the dollar amount of the prevailing claim."), *cert. denied*, 389 U.S. 1006, 88 S.Ct. 563, 19 L.Ed.2d 602 (1967); *Bergquist v. Theisen (In re Theisen)*, 45 B.R. 122, 126 (Bankr.D.Minn.1984) ("[O]nce avoidability is determined under state law, the transfer is entirely avoidable by a trustee in bankruptcy regardless of the amount of the creditor's claim relied on by the trustee."); *Gennet v. Silver (In re Harry Kaiser Assocs.)*, 14 B.R. 107, 109 (Bankr.S.D.Fla.1981) (Section 544(b) "gives the trustee the right to challenge on behalf of the estate any transfer voidable under state law if there is at least one creditor of the estate who had standing under state law to challenge the transfer. There are seven such creditors with claims totalling more than $72,000. The amount of these claims does not limit the trustee's cause of action.") (citation omitted).

Clinton concedes these cases establish that "a single transfer is avoidable in its entirety when the amount of that transfer is necessary to meet the amount of unsecured creditors' claims but [exceeds] them. For example, if unsecured creditors' claims equal $20,000 and the transfer involves $50,000, the cases ... confirm that the transfer is voidable in its entirety." Clinton asserts, however, that the cases do not justify invoking section 544(b) once a trustee recovers transfers in an amount sufficient to satisfy all unsecured claims. We disagree because, were Clinton correct, a party could escape fraudulent conveyance liability merely by making several small transfers instead of one large transfer. Acequia illustrates:

> ... Let's assume that the president of a corporation transfers $3 million of corporate assets to his personal account over a period of three years prior to the filing of a bankruptcy petition. The transfers are made by writing separate checks of $1 million each year. The last $1 million transfer was made within one (1) year

before the filing of the bankruptcy petition. At trial, the trustee is able to prove that all of the transfers were made with the intent to hinder and delay creditors. The controlling law of the state prohibits such transfers. At the time the bankruptcy petition was filed, there existed ten unsecured creditors with claims totalling $500,000.

> In this scenario, under § 548(a) the trustee may avoid only the $1 million transfer that occurred within one year before the filing of the bankruptcy petition. Under § 544(b), the trustee may clearly avoid the $1 million transfer made two years before the filing of the bankruptcy petition.... Under [Clinton]'s analysis, the trustee may not avoid the first $1 million transfer, even though it violated § 544(b), because that transfer exceeds the claims of the unsecured creditors. If, however, the first and second transfers occurred by the president writing one $2 million check instead of two $1 million checks, then Clinton concedes that the entire $2 million would be voidable.

Similarly, suppose a debtor with $50 in unsecured claims makes avoidable transfers of $10, $20, and $45. Under Clinton's reasoning, the *order* in which a trustee sought to recover the transfers would determine their avoidability. For example, by pursuing the $10 and $20 transfers first, the trustee could later avoid the $45 transfer in full. By recovering the $45 transfer first, however, the trustee could later avoid either the $10 or $20 transfers, but not both, because the final avoidance action would commence after the trustee had received an amount in excess of the unsecured claims. We refuse to interpret the Bankruptcy Code in such an arbitrary way.

Clinton contends that, without a "cap" on section 544(b) avoidance powers, section 548(a) would be a "nullity" because a trustee could recover fraudulent conveyances under both sections 544(b) and 548(a). The fact that both provisions might be available in some cases, however, is completely irrelevant to the interpretation of either statute because "[s]ection 544(b) presents a separate and distinct method of avoidance." *Collier*,

*supra* pages 10015–16, ¶ 544.03[1] at 544–16 (footnotes omitted). In fact, courts regularly apply section 544(b) to analyze transactions that also fall within the scope of section 548(a). *See, e.g., United Energy,* 944 F.2d at 594; *Kupetz,* 845 F.2d at 845.

Thus, we conclude that the magistrate judge erred by "capping" Acequia's recovery under section 544(b) at the amount of unsecured claims against the bankruptcy estate.

### 2.

 Our conclusion that Acequia has a *right* under section 544(b) to avoid transfers in excess of the amount of unsecured claims does not lead inexorably to the conclusion that Acequia may actually *recover* every transfer avoidable under that provision. Rather, the *extent* of Acequia's recovery is governed by section 550(a), which enables the corporation to pursue section 544(b) actions where recovery will accrue "for the benefit of the estate." 11 U.S.C. § 550(a). *See, e.g., Wellman v. Wellman,* 933 F.2d 215, 218 (4th Cir.) ("[A] debtor-in-possession of a bankruptcy estate cannot maintain an avoidance action ... unless the estate would be benefitted by the recovery of the transferred property."), *cert. denied,* —— U.S. ——, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991); *Collier, supra* pages 10015–16, ¶ 550.02 at 550–6 to 550–7 n. 3 ("The preamble to section 550(a) limits the trustee by permitting recovery only for the benefit of the estate. Thus, in general, the trustee or debtor in possession may not recover the property transferred or its value when the result is to benefit only the debtor rather than the estate.").

Although not expressly considering section 550(a), the magistrate judge did reason that "[t]o allow Acequia to recover *more* than it paid out to unsecured creditors would necessarily benefit the debtor, and in this case to the extent of several million dollars over the amount of unsecured claims that were paid." We disagree with this implicit determination that Acequia's recovery would not in fact "benefit the estate."

Courts construe the "benefit to the estate" requirement broadly, permitting recovery under section 550(a) even in cases where distribution to unsecured creditors is fixed by a plan of reorganization and in no way varies with recovery of avoidable transfers. In several cases, for example, courts have refused to dismiss avoidance actions even though the unsecured creditors had received full distributions under a plan of reorganization. The courts reasoned that the litigation could "benefit the estate" because the creditors had received an equity stake in the reorganized debtor and any recovery would increase the corporation's value. *See Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.),* 163 B.R. 964, 973 (Bankr.D.Del.1994) ("[T]he unsecured creditors will benefit from the enhanced value of reorganized TWA by reason of being shareholders of the reorganized debtor."); *Southern Indus. Banking,* 59 B.R. at 641 ("[T]o the extent that ... recovery of fraudulent transfers ... operates to increase the assets and financial health of the [debtor's] successor-in-interest, it also operates to proportionally increase the value of those ownership rights in the successor-in-interest which constitute a portion of the unsecured creditors' distribution under the plan.").

Other courts find even more tenuous "benefits" to satisfy section 550(a). In *Centennial Industries, Inc. v. NCR Corp. (In re Centennial Industries, Inc.),* 12 B.R. 99 (Bankr. S.D.N.Y.1981), for example, the bankruptcy court permitted a debtor to pursue avoidance actions where the plan of reorganization provided for fixed payments to unsecured creditors over a five-year period. The court reasoned that "any recovery by [the debtor] will increase the likelihood of the creditors receiving their future payments.... The recovery of [a] preference will be additional security for the fulfillment of the debtor's plan." *Id.* at 641. Similarly, in *Tennessee Wheel,* the bankruptcy court refused to dismiss the debtor's avoidance actions even though unsecured creditors had received a fixed distribution under the plan and stood to gain nothing from the litigation. The court found a "benefit to the estate" because the debtor funded its plan with a line of credit secured by postconfirmation assets: "Absent the post confirmation line of credit ..., unsecured claimholders would have received no distribution. The retention of power to pur-

sue avoidance actions ... was the consideration for [the] postpetition and post-confirmation advances to the debtor. No reorganization was possible without [the] new advances...." *Tennessee Wheel*, 64 B.R. at 726. *But cf. Harstad v. First Am. Bank (In re Harstad)*, 155 B.R. 500, 511–12 (Bankr. D.Minn.1993) (dismissing a postconfirmation preference action because the plan of reorganization "provides for a payment to creditors from a pot of money which will be unaffected by any preference recoveries").

Given this authority, we think recovery of the transfers at issue in Acequia's section 544(b) actions sufficiently "benefits the estate" to enable their continued prosecution. First, recovery would secure performance of Acequia's post-confirmation obligations under the plan of reorganization, including continued payments to Prudential pursuant to a long-term note. And, second, recovery would reimburse the bankruptcy estate for the costs of pursuing fraudulent conveyance litigation against Clinton.

More importantly, a contrary determination would lead to the anomalous conclusion reached by the magistrate judge that Clinton engaged in fraudulent conduct by transferring Acequia's funds with the actual intent to hinder and delay creditors, but that Acequia has no remedy for such conduct because it would not "benefit" from recovery of the funds. The magistrate judge was concerned about preventing a "windfall" to Acequia. We think, however, that requiring Clinton to disgorge wrongfully-transferred funds will merely make the bankruptcy estate whole. *See Morris v. Kansas Drywall Supply Co. (In re Classic Drywall, Inc.)*, 127 B.R. 874, 876 (D.Kan.1991) ("Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred."); *Pritchard v. Brown (In re Brown)*, 118 B.R. 57, 60 (Bankr.N.D.Tex. 1990) (same). Moreover, even if the recovery did constitute a "windfall," Acequia has a greater equitable claim to the transferred funds than does Clinton, the wrongdoer. We think it better to err on Acequia's side: "One simple truth is evident—if plaintiff is not permitted to seek recovery of the alleged fraudulent conveyances, there will be abso-

lutely *no* benefit to the unsecured creditors.... Defendants will receive a windfall." *Southern Indus.*, 59 B.R. at 643.

We therefore hold that, on the unique facts of this case, Acequia's section 544(b) fraudulent conveyance actions will "benefit the estate" within the meaning of section 550(a).

## C.

■■ In light of this conclusion, we must determine the transfers for which Clinton may be liable. As noted above, the magistrate judge applied section 544(b) and Idaho Code section 55–916 to hold that Acequia could recover an additional $64,000 under Counts XIII and IX. We review for clear error the magistrate judge's factual determination that Clinton intended to hinder or delay Acequia's creditors, *e.g.*, *United States v. Bertie*, 529 F.2d 506, 508 (9th Cir.1976) ("the question of fraudulent intent is one of fact, and not of law") (applying Idaho law); *Mohar v. McLelland Lumber Co.*, 95 Idaho 38, 42, 501 P.2d 722, 726 (1972) ("Whether a particular transaction was fraudulent is a question of fact to be determined from all the circumstances."), and we affirm that holding. However, because the magistrate judge failed fully to consider Counts V through VII, we reverse and remand for analysis of the transfers at issue in those counts.

### 1.

Analysis under Idaho Code section 55–916 is identical to analysis under section 548(a)(1), the Bankruptcy Code's actual fraudulent transfer provision. *See Bertie*, 529 F.2d at 508 ("certain indices of fraud may warrant an inference of actual fraud"); *Mohar*, 501 P.2d at 726 ("when certain 'badges of fraud' attend the conveyance, and are not adequately explained, an inference of actual fraud may be warranted"); *Chester B. Brown Co. v. Goff*, 89 Idaho 170, 173, 403 P.2d 855, 858 (1965) ("when numerous badges of fraud exist the burden of explaining the transactions will be shifted to the party seeking to uphold the transactions").

The magistrate judge traced the transfers at issue in Counts XIII and IX and concluded that Clinton could not account for $64,000.

Clinton's arguments against this conclusion take the same form as his arguments regarding liability under section 548(a)(1) and, for the same reasons, are incorrect. Specifically, the magistrate judge found sufficient indicia of fraud to shift "the burden of explaining the transactions" to Clinton, *Chester B. Brown*, 89 Idaho at 173, 403 P.2d at 858, and determined that Clinton failed to meet that burden:

> By the time these transfers occurred, Clinton was separated from Haley and was involved in a contested divorce action. Acequia had made interest payments on the Prudential loan for 1978, 1979, and 1980 but had failed to make the principal payments due on March 15, 1979 and 1980. Several lawsuits were pending. There was no basis for Clinton to conclude that Acequia owed him money pursuant to the much discussed shareholder loan account because by this time even Clinton's own accounting, as evidenced by the tax returns prepared by Clinton's accountant, ... show that Clinton owed Acequia.

Because this finding is not clearly erroneous, we affirm the magistrate judge's conclusion that Acequia may avoid, pursuant to section 544(b), $64,000 of transfers under Counts XIII and IX.

### 2.

After determining that a "cap" on Acequia's section 544(b) recovery was appropriate, the magistrate judge initially refused to analyze Counts V through XIII: "Since Acequia will be limited to recovering only the funds actually paid to unsecured creditors and further finding that the sum would probably not exceed $100,000, the Court will only analyze [Counts IX and X]." On reconsideration, after shifting Acequia's Count X recovery to a restitution theory and thereby making additional room under the section 544(b) "cap," the magistrate judge also analyzed Count XIII. At the same time, the magistrate judge purported to examine Counts V through VII: "As to Counts V through VII the Court finds that the transfers at issue to Clinton were not made with the intent to hinder or delay creditors. As stated on several prior occasions, the Court does not believe that during the formative years of the

corporation, Clinton made any of these transfers with the intent to hinder or delay creditors."

A review of the record, however, reveals no evidence of the "several prior occasions" to which the magistrate judge referred. Unlike his analysis for other counts, the magistrate judge made no attempt to trace or otherwise account for the funds at issue in Counts V through VII. Rather, the magistrate judge simply declined to consider the transactions at issue in those counts, even after finding additional room under the section 544(b) "cap." Because several badges of fraud appear to exist for those transactions, we think the magistrate judge should at least have explained *why* he concluded that Clinton did not intend to hinder or delay creditors by making the transfers. As a result, we remand the case for the magistrate judge to consider Acequia's section 544(b) claims in Counts V through VII.

### IV.

In addition to pursuing bankruptcy causes of action, Acequia sought to recover the transfers at issue in Counts V through XI on the alternative theory of common-law restitution. The magistrate judge initially refused to consider the issue, holding that Acequia's complaint did not put "Clinton on notice that he would be required to defend against" such an action. On reconsideration, however, the magistrate judge concluded that, in fact, Clinton *was* on notice of Acequia's restitution claims for Counts X and XI. Ultimately, the magistrate judge awarded Acequia $51,078 under Count X, and nothing under Count XI, pursuant to a restitution analysis. We affirm in all regards.

### A.

Clinton argues that the magistrate judge erred by permitting restitution recovery because Acequia failed to plead such a claim. Acequia, on the other hand, contends the magistrate judge erred by not analyzing the restitution claims for Counts V through IX as well as Counts X and XI. Neither party is correct.

"[T]he main purpose of the complaint is to provide notice of what plaintiff's claim is and the grounds upon which the claim rests. . . . [The] plaintiff must at least set forth enough details so as to provide defendant and the court with a *fair idea of the basis of the complaint and the legal grounds claimed for recovery.*" *Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462, 466 (9th Cir.1990) (emphasis added). Applying this standard, we agree with the magistrate judge's determination that Acequia adequately pleaded restitution claims in Counts X and XI but not Counts V through IX.

Acequia styled its complaint as a "COMPLAINT FOR RESTITUTION AND RECOVERY OF FRAUDULENT TRANSFERS." Counts V through IX, however, allege only that Acequia is entitled to recovery pursuant to relevant provisions of the Bankruptcy and Idaho Codes. In contrast, Counts X and XI do not provide a statutory provision enabling recovery, stating only that, "[o]n the basis of the foregoing, the Debtor is entitled to recover from Clinton." As Acequia acknowledges, this difference in pleading is crucial: "[U]nlike the other counts of the complaint which cite specific bankruptcy law provisions, Counts X and XI contain no such separate allegations. Rather, they are clean and straight-forward claims for restitution of misappropriated funds." Therefore, the magistrate judge's conclusion that Acequia adequately alleged restitution causes of action in Counts X and XI, which failed to provide independent statutory grounds for recovery, but not in Counts V through IX, which did so provide, is both logical and correct.

Acequia contends, however, that even if Counts V through IX initially did not give adequate notice of the restitution theory, the parties nevertheless tried the issue by implied consent and, as a result, the magistrate judge should have addressed the restitution claims pursuant to Federal Rule of Civil Procedure 15(b). *See* Fed.R.Civ.P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties they shall be treated in all respects as if they had been raised in the

pleadings."). We find no merit in this argument.

"To establish implied consent, the [plaintiff] must demonstrate that [the defendant] understood evidence had been introduced to prove [the new issue], and that [the new issue] had been directly addressed, not merely inferentially raised by incidental evidence." *LaLonde v. Davis,* 879 F.2d 665, 667 (9th Cir.1989). *Accord Campbell v. Board of Trustees,* 817 F.2d 499, 506 (9th Cir.) Acequia fails to make such a showing, arguing only that Clinton's defense of a restitution claim would require "exactly the same evidence" as that used to defend the section 544(b) and 548(a) causes of action. Where "evidence . . . allege[d] to have shown *implied* consent was also relevant to the other issues at trial[,] [it] cannot be used to imply consent to try the [unpleaded] issue." *Dole v. Mr. W Fireworks, Inc.,* 889 F.2d 543, 547 (5th Cir.1989), *cert. denied,* 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 497 (1990). *See Wesco Mfg. v. Tropical Attractions,* 833 F.2d 1484, 1487 (11th Cir.1987) ("The introduction of evidence arguably relevant to pleaded issues cannot serve to give a party fair notice that new issues are entering the case.").

Thus, the magistrate judge correctly analyzed only Counts X and XI under a restitution theory.

### B.

The magistrate judge awarded Acequia full restitution for Count X and no restitution for Count XI. In Idaho, "[w]hen a person has been unjustly enriched at the expense of another he must make restitution to the other. . . . The substance of [the] action . . . lies in a promise, implied by law, that a party will render to the person entitled thereto that which in equity and good conscience belongs to the latter." *Smith v. Smith,* 95 Idaho 477, 483, 511 P.2d 294, 300 (1973). "The simple, but comprehensive, question is whether the circumstances are such that equitably, respondent (defendant) should restore to appellants (plaintiffs) that which he has received." *Hixon v. Allphin,* 76 Idaho 327, 333, 281 P.2d 1042, 1045 (1955). *See e.g., Cozzetto v. Wisman,* 120 Idaho 721,

726, 819 P.2d 575, 580 (1991) ("All that need be shown is that the defendant obtained something of value to which he was not entitled, to the detriment of another.").

### 1.

■ The magistrate judge awarded full recovery under Count X: "Count X alleges that Clinton used Acequia funds to pay for private counsel. Under Idaho law, Acequia does not even have to prove fraudulent intent if it can establish that 'in good conscience' Clinton should not have withdrawn corporate funds to pay for private counsel. Acequia is entitled to judgment ... under the theory of unjust enrichment."

Clinton's only response to the magistrate judge's decision is that (1) "Clinton was the sole shareholder of Acequia and, therefore, had the power, indeed the right, to make use of Acequia's assets," and (2) Haley agreed to such payments. As the bankruptcy court noted in denying Clinton's motion for summary judgment, these arguments miss the point: "Neither the Divorce Decree nor any agreement between the parties is binding on the corporate-debtor as to obligations of the parties[ ] for their personal expenses. *[Clinton] confuses the community and personal assets consisting of corporate stock with the corporate debtor's funds and assets.* A stockholder has no authority to use corporate assets for personal debts." (emphasis added).

Clinton admittedly used Acequia's money to pay his personal obligations and, as a result, the magistrate judge correctly ordered restitution of those funds at issue in Count X.

### 2.

The magistrate judge denied all recovery under Count XI:

In Count XI, Acequia seeks to recover from Clinton the sum of $1,989,126.38 based on unaccounted loan proceeds from a 1977 loan by Prudential Insurance Company in July of 1977. The Court finds that Acequia has failed to prove by a preponderance of the evidence that it is entitled to recovery based on unjust enrichment. The evidence at trial, presented by Clin-

ton, established that this money did not go to his own personal benefit. At the time, Clinton was merging Clinton Ranches into Acequia. While some of the loan proceeds may well have gone to pay bank obligations under the name of Clinton Ranches, Acequia received the benefit of Clinton Ranches' operating loans which in turn had been expended for items such as seed, deposits to power suppliers, fertilizer and crops and other improvements that Acequia in effect inherited from Clinton Ranches in the subsequent operating year. The benefits, such as they were, inured to the benefit of Acequia and not Clinton and the Court finds that in 1977 there was no unjust enrichment to which Acequia should now be able to assert a claim.

Acequia attacks the magistrate judge's determination on two grounds. First, the corporation contends that the magistrate judge erred by accepting Clinton's explanation of how he used the loan funds. Acequia argues that its expert, Susan Westlake, "wholly discredited and impeached" Clinton's accounting of the Prudential proceeds. The magistrate judge, however, found Eastlake's analysis unpersuasive because she failed to trace the funds to their ultimate disposition. As a result, the magistrate judge traced the proceeds himself and, ultimately, concluded that "Clinton has accounted for the funds." This analysis is not clearly erroneous.

■ Second, Acequia disputes the magistrate judge's conclusion that Clinton's personal use of the money "inured to Acequia's benefit." Acequia complains that the magistrate judge's conclusion "requires a complete disregard for Acequia's corporate identity." This may be true. Unlike analysis under sections 544(b) and 548, however, this fact is not determinative in the context of a restitution action, the basis of which is whether "the defendant obtained something of value to which he was not entitled." *Cozzetto*, 819 P.2d at 580. The magistrate judge determined that, although Clinton may have used the loan proceeds for Clinton Ranch operations, Acequia ultimately received the benefits and, as a result, Clinton was not unjustly

enriched. This conclusion also is not clearly erroneous.

We therefore affirm the magistrate judge's denial of recovery on Count XI.

## V.

■ Throughout the litigation below, Clinton contended that Haley was liable for half of any judgment against him as a community obligation of their former marriage. In fact, the bankruptcy court joined Haley as an indispensable party, reasoning that "[t]he claim before this Court is to retrieve estate property. If such property, if any, was used by the community and is to be recovered from community property, Rosemary Haley as a member of the community should be joined as a party.... At this time, the Court does not know which party may be the owner of any estate property which the Debtor-in-Possession may recover. This involves factual issues to be determined at trial." Ultimately, however, the magistrate judge concluded that Haley was not liable for Clinton's obligations:

> The basis for recovery ... is based on recognized tort concepts under theories of fraudulent conveyances. The general rule is that a spouse's interest in community property may be liable for the tort of the spouse if at the time of the tortious act the spouse was acting for the benefit of the community or whether he had deviated from the community business and was acting for his own personal benefit. In order for one spouse's interest in community property to be held liable for the tort of the other it must be affirmatively established that the act was expressly or impliedly authorized and was at the time of the act actually attending to the affairs or business of the community....
>
> In this case, the court has found that all transfers [for which Clinton is liable] occurred after the parties had separated. Clinton used the funds for his own person-

al benefit and the court does not find that at the time he was acting on behalf of the community or attending community business.

We affirm the magistrate judge's refusal to enter judgment against Haley for Clinton's liability under Counts I through IV and XIII through XI. However, because we remand for further consideration of Counts V through VII, we also remand the issue of Haley's liability on those claims as well.

### A.

■ In Idaho, "when either member of the community incurs a debt for the benefit of the community, the property held by the marital community becomes liable for such a debt and the creditor may seek satisfaction of his unpaid debt from such property." *Twin Falls Bank & Trust Co. v. Holley*, 111 Idaho 349, 341, 723 P.2d 893, 897 (1986). Generally, courts presume that all obligations incurred during marriage inure to the benefit of the community. *Simplot v. Simplot*, 96 Idaho 239, 245, 526 P.2d 844, 851 (1974). This is true "despite a separation, until a decree of divorce." *Suter v. Suter*, 97 Idaho 461, 466, 546 P.2d 1169, 1174 (1976).

■ However, as the magistrate judge recognized, one spouse is liable for a *tort* of the other only if the spouse authorizes the tortious act and the act furthers a community purpose. *See, e.g., Hansen v. Blevins*, 84 Idaho 49, 56, 367 P.2d 758, 762 (1962); *DePinto v. Provident Sec. Life Ins. Co.*, 374 F.2d 50, 52 (9th Cir.1967) (Arizona law). Clinton and Haley were either separated or divorced during the time of the transfers at issue in Counts I through IV and Counts VIII through XI. Because Clinton presented no evidence that the transfers in those counts benefitted the marital community, the magistrate judge correctly refused to hold Haley jointly liable for Clinton's tortious conduct.[3]

---

**3.** This conclusion applies with equal force to the transfers at issue in Count X (with which Clinton paid his attorneys) to the extent those conveyances were fraudulent. In any event, "the rule that pre-divorce attorney fees must be treated as community debts ... has been statutorily set aside

...," *Jensen v. Jensen*, 124 Idaho 162, 170, 857 P.2d 641, 649 (1993), and, as a result, the magistrate judge's determination that the Count X transfers did not benefit the marital community is not clearly erroneous.

**B.**

Haley and Clinton were married and not separated, however, at the time of the transfers at issue in Counts V through VII. As a result, because we remand for consideration of those additional transactions, we also remand the issue of Haley's liability for those claims.

**VI.**

In his answer to Acequia's complaint, Clinton asserted the following as his "Ninth Defense":

> Clinton is entitled to a set-off from any judgment for monies owed to Clinton by [Acequia] because Clinton ... received no salary from [Acequia] for services rendered to [Acequia]. Clinton is also entitled to set-off for monies allegedly owed because [Acequia] has retained payments made on the Desert Land Entry ["DLE"] Property.

The magistrate judge disagreed, concluding that Clinton was not entitled to any setoff claims: "[M]utuality of obligations is not met where the claimed set-off is based on fraudulent actions. As far as any funds that the Court has found were transferred to Clinton with the intent to hinder or delay creditors, there would be no set-off." Nevertheless, the magistrate judge concluded that Clinton and Acequia had reached an agreement regarding rental of the DLE property after confirmation and, accordingly, the magistrate judge entered judgment for Clinton in the amount of rent due from the date of confirmation: "The Court sees this claim, not as one regarding a set-off, but for money due on a post-confirmation agreement between Acequia and Clinton. Acequia is leasing the land [from] Clinton and Haley and therefore owes them the fair rental value."

We affirm the magistrate judge's determination to deny the setoff claims but reverse the decision to award Clinton affirmative relief on the rent claim.

**A.**

Section 553 of the Bankruptcy Code provides that a creditor may "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case ... against a claim of the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). As the magistrate judge recognized, "[a] fraudulent conveyance cannot be offset against or exchanged for a general unsecured claim." *United Energy*, 944 F.2d at 589. "Section 553(a) setoffs ... do not apply to actions by the Trustee to recover fraudulent transfers: 'It would defeat the purpose of the Bankruptcy Act's provisions relating to fraudulent transfers to allow [creditors] to offset the value of the property thus transferred to them by the amount of their unsecured claim against [the debtor].'" *Bustamante v. Johnson (In re McConnell)*, 934 F.2d 662, 667 (5th Cir.1991) (quoting *Mack v. Newton*, 737 F.2d 1343, 1366 (5th Cir.1984)). *See Mack*, 737 F.2d at 1366 ("The reason [for the "no setoff" rule] is, to permit this to be done would defeat the right to recover the [conveyance] and render the statute futile. In such a case the transaction is single [as opposed to mutual], and results in a depletion of the fund that would otherwise have gone to creditors.... [T]he right to offset is denied, because the estate has been depleted to the detriment of creditors of like class, and to allow the right of set off would perpetuate the depletion.") (quotation omitted).

Accordingly, because Clinton received fraudulent transfers with the actual intent to hinder or delay creditors, the magistrate judge did not abuse his discretion by denying Clinton's setoff claims. *See Riggs v. Government Employees Fin. Corp.*, 623 F.2d 68, 73 (9th Cir.1980) ("it is well settled that allowance of a setoff lies within the sound discretion of the trial court"); *Bacigalupi v. Parkway Plaza Investors (In re Bacigalupi, Inc.)*, 60 B.R. 442, 445 (9th Cir. BAP 1986) ("The allowance or disallowance of a setoff is a decision which ultimately rests in the sound discretion of the bankruptcy court.").

**B.**

The magistrate judge reasoned that, although setoff was not appropriate, Clinton was entitled to half the fair rental value of DLE property based on a "post-confirmation

agreement" he made with Acequia. We reverse this conclusion because the only "agreement" between Clinton and Acequia was a stipulation, made at the pretrial conference, that the postconfirmation rental value of the DLE property was $30,000 per month. At the pretrial conference, in fact, Acequia expressly *refused* to stipulate to ownership of the property.

The magistrate judge ultimately determined that Clinton and Haley had owned the property since 1978. Acequia correctly argues that, nevertheless, this conclusion does not automatically entitle Clinton to the relief granted by the magistrate judge:

> Clinton pled his request for a set-off as a defense and never raised an affirmative claim for relief. Instead, Clinton pursued affirmative relief on the DLE property in a shareholder derivative suit filed against Acequia in United States District Court. Clinton indicated in that case, not in this action, that he would seek an "accounting" for the post-confirmation DLE rents. Misled by Clinton's duplicitous claims, Acequia was denied an opportunity to demonstrate that it has invested substantial monies into the DLE property over the years in the form of significant capital improvements, payment of property taxes and management fees, and payment of all other landlord expenses. Acequia did not consent to try the issue of post-confirmation DLE rents in this lawsuit.

We therefore reverse the magistrate judge's affirmative award of DLE rents to Clinton. If Clinton is entitled to such rent, he can receive it in the pending shareholder derivative action.

## VII.

The magistrate judge awarded prejudgment interest to Acequia. Clinton contends that such an award was improper because it is "unjust" and because Acequia's damages were not easily calculable. This argument is without merit.

Regarding Acequia's claims under section 548(a), "[t]he award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the trial court. Awards of prejudgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *Purcell v. United States,* 1 F.3d 932, 942–43 (9th Cir.1993) (quotation omitted). *Accord, e.g., Home Savs. Bank, F.S.B. v. Gillam,* 952 F.2d 1152, 1161 (9th Cir.1991).

Regarding Acequia's restitution claims and claims under section 544(b),[4] Idaho law provides that "[p]rejudgment interest is allowed where the amount claimed is liquidated or may be ascertained by mathematical computation," *Insurance Assocs. Corp. v. Hansen,* 116 Idaho 948, 951, 782 P.2d 1230, 1233 (1989) (quotation omitted), particularly where "the interest in fully compensating the injured party predominates over other equitable considerations," *Stoor's Inc. v. Idaho Dep't of Parks & Recreation,* 119 Idaho 83, 86, 803 P.2d 989, 992 (1990) (quotation omitted). *Accord, e.g., Fuller v. Wolters,* 119 Idaho 415, 424, 807 P.2d 633, 642 (1991).

Under either standard, the magistrate judge clearly did not abuse his discretion by awarding prejudgment interest in this case, in which the amount of fraudulent transfer liability was easily calculable by examining the checks Acequia wrote to Clinton:

> ... In bankruptcy proceedings, the courts have traditionally awarded prejudgment interest from the time demand is made or an adversary proceeding is instituted unless the amount of the contested payment was undetermined prior to the bankruptcy court's judgment.

In the instant case, the award of prejudgment interest to the trustee would unquestionably serve to compensate the debtor's estate for appellants' use of those funds that were wrongfully withheld from the debtor's estate during the pendency of the current suit. Additionally, an award of

---

4. "[S]tate law regarding prejudgment interest is applicable via 11 U.S.C. § 544(b)." *Agricultural Research,* 916 F.2d at 541.

prejudgment interest would appear to be consistent with the balance of the equities.

Finally, there is no dispute that the amount of the contested payment was clearly determined prior to the bankruptcy courts judgment.

*Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.),* 4 F.3d 1556, 1566 (10th Cir.1993) (citations omitted). *Cf. Robinson v. Watts Detective Agency, Inc.,* 685 F.2d 729, 741–42 (1st Cir.1982) (refusing to award prejudgment interest where the alleged avoidable transfer "was not liquidated, there was no transfer of a definite sum of cash, and the parties did not and do not agree on the value of what was transferred"), *cert. denied,* 459 U.S. 1105, 1204, 103 S.Ct. 728, 1191, 74 L.Ed.2d 953, 75 L.Ed.2d 436 (1983).

The award of prejudgment interest was proper.

## VIII.

■ The magistrate judge declined Acequia's request for attorney's fees. On appeal, Acequia cites no statutory or contractual basis for such fees, arguing only that "exceptional circumstances" justify an award of fees. *See Richardson v. Alaska Airlines, Inc.,* 750 F.2d 763, 765 (9th Cir.1984) ("The American rule denies attorney's fees to a litigant in federal court in the absence of contract, applicable statute, or other exceptional circumstances.... [A]ny exceptions to the American Rule will be narrowly circumscribed.") (citation omitted). In view of the magistrate judge's determination that "Clinton's defense of this case was neither unreasonable, frivolous, nor vexatious," the refusal to award attorney's fees was not an abuse of discretion.

## IX.

In conclusion, we find that the magistrate judge correctly (1) held Clinton liable under section 548(a)(1) for the fraudulent transfers at issue in Counts I through IV and IX; (2) held Clinton liable under a restitution theory for the transfers at issue in Count X; (3) determined that Haley is not liable for the transfers at issue in Counts I through IX and

XIII through XI; (4) denied Clinton's setoff claims; (5) awarded prejudgment interest; and (6) denied Acequia's request for attorney's fees. However, we conclude that the magistrate judge (1) incorrectly imposed a "cap" on Acequia's claims under section 544(b) and therefore erred by failing to analyze Counts V through VII; (2) erroneously failed to consider Haley's liability for Counts V through VII; and (3) incorrectly transformed Clinton's setoff defense into affirmative recovery on the DLE rent claim.

We therefore affirm in part, reverse in part, and remand for analysis under section 544(b) of Counts V through VII of Acequia's complaint. The parties shall bear their own costs on appeal.

**AFFIRMED in part. REVERSED in part. REMANDED.**

GOODWIN, Circuit Judge, dissenting:

The majority finds that the bankruptcy court did not clearly err in holding that Vernon Clinton acted "with actual intent to hinder, delay, or defraud" Acequia's creditors. *See* 11 U.S.C. § 548(a)(1). I disagree. The bankruptcy court's finding that the "transfer of Acequia funds to Clinton's personal name ... could not help but hinder and delay payment to Acequia's creditors[,] a fact Clinton would certainly have been aware of" is not supported by the evidence. All of Acequia's creditors were paid in full, and any delay in payment was caused by the bankruptcy court proceedings initiated by Acequia, at that time no longer controlled by Clinton. A finding that creditors were injured is not always necessary to a determination that a debtor acted with actual intent to hinder, delay, or defraud them. *See, e.g., First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1343 (9th Cir.1986). However, we should not rely upon a judicial doctrine to construct an intent to defraud where no actual intent to defraud existed.

Furthermore, at all material times Acequia was, and still is, controlled by Rosemary Haley or her estate. It appears that Haley's estate availed itself of the bankruptcy court after failing to obtain satisfaction in extended and rancorous divorce proceedings. I refuse

to encourage this kind of litigation strategy by resorting to a legal fiction that creditors were "hindered, delayed, or defrauded" when none were.