723 P.2d 893

**TWIN FALLS BANK & TRUST COMPANY, an Idaho corporation, Plaintiff-Appellant,**

v.

**Joan F. HOLLEY, Defendant-Respondent.**

No. 16027.

Supreme Court of Idaho.

July 29, 1986.

Daniel A. Slavin, of Stephan, Slavin, Kvanvig & Greenwood, Twin Falls, for plaintiff-appellant.

William R. Hollifield, of Decker & Hollifield, Twin Falls, for defendant-respondent.

BAKES, Justice.

Twin Falls Bank & Trust Company (bank) appeals a decision of the district court granting summary judgment in favor of defendant Joan F. Holley in the bank's action to collect on a debt arising from a promissory note executed by Mrs. Holley's husband prior to their divorce. The bank also appeals the district court's decision awarding attorney fees to defendant Joan Holley. Appellant bank contends that the debt arising from the promissory note is a community obligation and collectable from the community assets which Mrs. Holley received in the divorce settlement.

Respondent Joan F. Holley and her husband John E. Holley were married for a period of 23 years, terminating in divorce on August 28, 1981, in Twin Falls. John Holley operated a construction business (J. Holley Construction) both during the time of marriage and thereafter. During the period of their marriage the construction company was a community asset.

John Holley began borrowing money for his construction business from the bank in December, 1980. He borrowed $25,000 to pay off loans from other banks and for operating expenses of the construction business. In March, 1981, Mr. Holley was granted a general line of credit for the operation of the construction company. By April, 1981, Mr. Holley had borrowed $65,-000 on that line of credit. Mr. Holley failed to timely repay the loans on the line of credit; nevertheless, the bank "renewed" the obligations on June 26, 1981. At that time, Mr. Holley signed an *unsecured* promissory note for $125,000. The

note consisted of a renewal of the $65,000 previously owed plus an advancement of an additional $60,000. The note called for payment of the principal plus interest on September 28, 1981. The bank issued the note in reliance on a financial statement submitted by Mr. Holley on December 30, 1980. That financial statement showed that Mr. Holley was married to respondent Joan F. Holley, but other than her name and Social Security number the statement provided no information about Joan. Questions regarding Joan's finances were left unanswered, based on the following specific language found on the statement, "Information regarding your spouse need not be revealed unless such spouse will be contractually liable upon the loan or you are relying upon such spouse's income as a basis for the credit request." Mr. Holley alone signed the financial statement.

At the time the $125,000 promissory note was signed, Mr. Holley and his wife were separated and living apart. Like the financial statement, the promissory note was signed by Mr. Holley alone. Following the signing of the June 26, 1981, promissory note, the bank maintained close contact with Mr. Holley and ultimately became aware of his marital problems and that a divorce had been filed.

As part of the divorce decree entered on August 28, 1981, Mr. Holley was awarded the construction business and certain other real and personal property, and he assumed the June 26, 1981, promissory note obligation. Mr. Holley subsequently failed to repay the note when it came due on September 28, 1981. The bank, however, chose not to proceed to collect from Mr. Holley's assets or from any other community assets divided as a result of the divorce decree. Instead, the bank and Holley renegotiated the terms of the note and executed an "extension agreement" on October 9, 1981. The bank agreed to extend the due date on the June 26th promissory note to November 22, 1981, in exchange for a security interest in all of Mr. Holley's real and personal property, including a mortgage on Mr. Holley's commercial property. The deed of trust executed in favor of the

bank by Mr. Holley specifically indicated that Mr. Holley was "a divorced man, d/b/a J. Holley Construction Co." Joan Holley was neither informed nor consulted about the extension agreement, nor did she sign the agreement. Additionally, the renegotiated or "renewed" note was based on a financial statement dated October 6, 1981, under the name of John E. Holley. The financial statement specifically lists Mr. Holley as unmarried and the statement recites that the reduction in value of the real estate previously listed in the 1980 financial statement was the result of a property settlement made with Mrs. Holley.

Though solvent at the time the extension agreement was entered into, Mr. Holley eventually defaulted on the renegotiated promissory note. On February 19, 1982, he filed for bankruptcy and was discharged the following year. The bank failed or neglected to either promptly or properly record its deed of trust on Holley's real property and, as a result, the real property securing the promissory note was lost to the trustee in bankruptcy. The bank was, however, successful in taking possession of various equipment prior to the filing of bankruptcy and received some payments from Mr. Holley as a result of the bankruptcy proceedings. However, the bank was left substantially unsatisfied on the $125,000 note with a principal balance still owing of $65,000 and interest due in excess of $50,000. Unable to collect from Mr. Holley, the bank commenced the present action against Joan Holley on January 26, 1984. Apparently, this was the first time Mrs. Holley had any contact with the bank regarding the loan.

The district court found that while normally the bank could look to community property distributed pursuant to a divorce decree to satisfy community obligations, the bank's action in executing the "extension agreement" effectively removed the obligation from any community assets distributed to Joan pursuant to the divorce decree. The district court found that the "extension agreement" was a new agree-

ment between the bank and Mr. Holley and, as such, extinguished the June 26, 1981, promissory note. The court specifically found that the intent of the bank and Mr. Holley in executing the extension agreement was "to rely solely on the assets of John E. Holley and his construction business in satisfaction of the debt." The district court granted summary judgment in favor of Joan, as well as awarding her costs plus $4,500 in attorney fees, based on its finding that the bank's action was without foundation and frivolous (I.R.C.P. 54(e)). We affirm the district court, albeit on different grounds.

### I

This case can be resolved based on fundamental principles governing the debtor-creditor relationship. Generally speaking, a creditor must obtain a judgment to collect on a debt whether it is based on contract, tort or other obligations. The exception would be if the obligation was secured by a mortgage or some other form of security interest. Once a creditor obtains a judgment he is able to collect on his debt by execution on the debtor's assets. "These judicial procedures do not change whether dealing with a single or married debtor. The difference is the type of property that is subject to execution or attachment for the debt involved." J. Henderson, Creditors Rights under a Community Property System, Idaho Law Foundation, *Idaho Community Property Law*, § 9.4 (1983). Under the facts of this case, a debtor-creditor relationship existed only between the bank and respondent's ex-husband John Holley. The debt evidenced by the June 26, 1981, promissory note was incurred by John Holley for the benefit of the marital community. However, respondent Joan Holley, not having signed the note, was not contractually liable for the debt evidenced by the promissory note; only John Holley signed and is liable for the note.

The bank contends that since the debt incurred by John Holley was for the benefit of the community it is properly characterized as a "community debt." The phrase "community debt" is correct terminology insofar as it is used to signify a debt incurred for the benefit of the marital community. However, to the extent the phrase is used to imply the existence of a "community debtor," the phrase is imprecise and misleading. The marital community is not a legal entity such as a business partnership or corporation. *de Elche v. Jacobsen*, 95 Wash.2d 237, 622 P.2d 835, 838 (1980); *Bortle v. Osborne*, 155 Wash.2d 585, 285 P. 425 (1930); 15A Am.Jur.2d, *Community Property*, § 5 (1976). While one may properly speak of a "corporate debtor," there is no such entity as a "community debtor." *See Williams v. Paxton*, 98 Idaho 155, 559 P.2d 1123 (1977); J. Henderson, Creditors Rights under a Community Property System, *supra*. To the extent a lending institution enters into a creditor-debtor relationship with either member of the marital community or with both members, it does so on a purely individual basis. Thus, the lending institution may have a creditor-debtor relationship with either spouse separately or with both jointly. As stated earlier, the community property system does not affect the fundamental principles governing such a relationship and the procedures required of a creditor in order to collect upon his debt. Rather, the community property system merely affects the type or kinds of property to which the creditor may look for satisfaction of his unpaid debt. J. Henderson, Creditors Rights Under a Community Property System, *supra*. Essentially, the community property system merely makes additional resources (community property) available to a creditor from which to seek satisfaction of unpaid debt. Thus, under the community property system in Idaho and I.C. § 32-912,[1] which has established a rule of

---

1. **"32-912. Control of community property.**— Either the husband or the wife shall have the right to manage and control the community property, and either may bind the community property by contract, except that neither the husband nor wife may sell, convey or encumber the community real estate unless the other joins in executing and acknowledging the deed or

co-equal management of community assets or property, when either member of the community incurs a debt for the benefit of the community, the property held by the marital community becomes liable for such a debt and the creditor may seek satisfaction of his unpaid debt from such property. *Simplot v. Simplot,* 96 Idaho 239, 526 P.2d 844 (1974); W. deFuniak & M. Vaughn, Principles of Community Property, § 159 (2d ed. 1971).

The debt upon which the bank is asserting this claim against Mrs. Holley was evidenced by the promissory note executed solely by Mr. Holley on June 26, 1981, which had renewed an earlier note. At that time the bank had a claim against Mr. Holley which it could satisfy by judgment and execution against either Mr. Holley and any separate property which he may have had, or against the community property of Mr. and Mrs. Holley. Mr. and Mrs. Holley were subsequently divorced and the community property was equitably divided between them and became the separate property of each. When the June 26, 1981, note became due in September of 1981, the bank could have immediately proceeded to judgment against John Holley and levied against the property of John Holley, including any community property which was distributed to John Holley. If that community property distributed to John Holley was insufficient to satisfy the obligation, the bank could have proceeded by execution against the community property which had been awarded to Mrs. Holley and which was now her separate property, as hereinafter discussed. However, the bank chose not to do this. Rather, when the note became due in September, 1981, the bank extended the note and additionally took a security interest in property held by John Holley. Mr. Holley subsequently defaulted on the extension agree-ment and later filed for bankruptcy. The bank was successful in taking possession of several pieces of property under its security agreement with Mr. Holley. However, the bank failed to perfect its security interest in real property held by Mr. Holley, losing it to the bankruptcy trustee. In short, the bank's inability to obtain satisfaction for its unpaid obligation was in large part attributable to the bank's failure to perfect its security interest in real property held by John Holley. After bankruptcy and Mr. Holley's discharge from the obligation to the bank, when the bank had not received sufficient satisfaction from Mr. Holley's assets to satisfy his obligation to the bank, this proceeding was brought against Mrs. Holley. However, Mrs. Holley had not signed the June 26, 1981, note and thus was not personally liable for that obligation. *See Williams v. Paxton,* 98 Idaho 155, 559 P.2d 1123 (1977).

Absent allegations of such contractual liability, a creditor may not, with one exception, proceed against community assets distributed to Mrs. Holley pursuant to a divorce decree. The sole exception to this rule was set forth in our case of *Spokane Merchants Ass'n v. Olmstead,* 80 Idaho 166, 327 P.2d 385 (1958). In that case we held that where, pursuant to divorce proceedings, one member of the marital community is responsible for a community obligation but is not awarded sufficient community assets to satisfy such a debt, a creditor may properly seek satisfaction for the debt from community property distributed to the other spouse. Essentially, the holding of *Spokane Merchants Ass'n v. Olmstead, supra,* is that members of the marital community may not utilize divorce proceedings to perpetrate a fraud on creditors of the community. In order for the bank in the present case to avail itself of the exception set forth by the

---

other instrument of conveyance, by which the real estate is sold, conveyed or encumbered, and any community obligation incurred by either the husband or the wife without the consent in writing of the other shall not obligate the separate property of the spouse who did not so consent; provided, however, that the husband or wife may by express power of attorney give to the other the complete power to sell, convey or encumber community property, either real or personal. All deeds, conveyances, bills of sale, or evidences of debt heretofore made in conformity herewith are hereby validated."

*Olmstead* case, it must allege and prove that Mr. Holley was not awarded sufficient community assets which would enable him to satisfy the community debt which he assumed pursuant to the property settlement agreement. This the bank has failed to do in the present case. Indeed, the bank does not even allege facts to bring it within the *Olmstead* exception. Instead, the record indicates that sufficient assets were distributed to Mr. Holley as part of the divorce proceedings which would have enabled him to satisfy the community obligation which he assumed pursuant to the property settlement agreement.

We conclude that the bank was without any basis in law or fact to sue Joan Holley or otherwise execute on former community property now in her possession. Because of our disposition of this issue, we need not reach the issue upon which the district court relied in awarding summary judgment to respondent, namely, that the extension agreement constituted a new agreement between the bank and John Holley, effectively extinguishing the June 26, 1981, promissory note.

## II

On appeal, the bank additionally contends that it was error for the district court to award attorney fees to respondent Joan Holley. We disagree. In its order awarding attorney fees, the district court specifically found that the bank's actions were without foundation and, as we have discussed in the preceding section, we agree. The award of attorney fees is a matter committed to the sound discretion of the trial court and will not be overturned on appeal absent a showing of abuse of discretion. We find no such abuse of discretion in the present case and affirm the district court's order awarding attorney fees.

The order of the district court awarding summary judgment and attorney fees to respondent is affirmed. On appeal, costs and attorney fees to respondent.

DONALDSON, C.J., and BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, J., concurs in result.