**In re Lloyd HICKS and Merri Beth Hicks, Debtors.**

**No. 01–41673.**

United States Bankruptcy Court, D. Idaho.

Oct. 20, 2003.

Lloyd Hicks, Idaho Falls, ID, pro se debtor.

Steven L. Wetzel, Idaho Falls, ID, for Merri Beth (Hicks) Chiles.

Jim Spinner, Service Spinner & Gray, Pocatello, ID, for L.D. Fitzgerald, Chapter 7 Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

### The Dispute

Debtors Lloyd and Merri Beth Hicks, while still married, filed a joint petition for relief under Chapter 7. Their bankruptcy case is nearing a conclusion, but Ms. Hicks objects to the proposed Final Account filed by Chapter 7 trustee L.D. Fitzgerald. In that Final Account, the trustee proposes to pay all allowed creditors' claims in full, and to return any excess funds to Debtors, who are now divorced. The funds the trustee intends to use to pay the creditors were derived almost entirely from the settlement of a discrimination lawsuit Ms. Hicks prosecuted against a former employer, which was settled during the pendency of the bankruptcy case. Ms. Hicks contends that any recovery from the lawsuit is her separate property under state law because the alleged discrimination occurred prior to her marriage to Mr. Hicks. She protests the trustee's plan to use her separate property to satisfy the debts of Mr. Hicks for which she would not be responsible under state law.

The Court must resolve whether a Chapter 7 trustee may use the separate property of one joint debtor to satisfy the debts of the other joint debtor. Because the Court concludes this approach is not authorized under either state law or the Bankruptcy Code, the trustee cannot use Ms. Hicks's separate property to satisfy any of Mr. Hicks's separate debts.[1]

### The Course of Proceedings

Debtors Lloyd and Merri Beth Hicks were married on October 2, 1999. Objection, Docket No. 48. They filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on August 31, 2001. See Docket No. 1 (Debtors' petition and sched-

---

1. It is also important to identify several questions that are not before the Court at this time. The parties submitted the issue described above as a pure question of law. In other words, at this point in the proceedings, no evidence or testimony has been presented that would allow the Court to decide whether the proceeds of the discrimination action constitute, in whole or in part, Ms. Hicks's sole and separate property. Nor can the Court determine on this record whether any of the claims that the trustee proposes to pay are community debts or Mr. Hicks's separate debts. Given the Court's holding on the legal issue raised by the parties in this case, a further evidentiary hearing must be conducted to allow the Court to make findings and conclusions concerning these issues.

ules). Debtors were divorced on December 28, 2001. Objection, Docket No. 48. Just prior to their divorce, on December 7, 2001, Debtors received a discharge and on January 15, 2002, their bankruptcy case was closed. Docket Nos. 6, 9. On January 29, at the trustee's request, the case was reopened to administer an unscheduled asset, Ms. Hicks's claims against her former employer for discrimination. Docket No. 11. Those claims were later settled, and the settlement was approved by the Court. Docket No. 24. As it turns out, the proceeds of the settlement are sufficient in amount to pay all administrative costs of the bankruptcy case and all of Debtors' combined creditors' claims in full, with $7,737.21 left over.

On June 19, 2003, the trustee submitted a Final Account and Request for Compensation and Expenses, Docket No. 42, in which he proposed, among other things, to pay all unsecured creditors in full using the lawsuit settlement proceeds. Ms. Hicks filed an objection to the trustee's Final Account, expressing several bases for her opposition. Docket No. 48. The Court held an initial hearing on Ms. Hicks's objection on August 26, 2003, at which the Court instructed the parties to cooperate in exchanging certain information about the case. The Court also invited them to schedule a further hearing on

Ms. Hicks's objection if they were unable to resolve the dispute.

Ms. Hicks's objection was not resolved and a second hearing was conducted on September 12. A threshold legal issue emerged from the parties' arguments offered at that hearing concerning the propriety of the trustee's use of Ms. Hicks's separate property to pay any so-called "separate debts" of Mr. Hicks. The Court concluded it should consider that issue of law first, reserving any evidentiary issues for a subsequent hearing, if necessary.[2] At the Court's invitation, both parties submitted additional briefing.[3] Docket Nos. 55, 56, 57, 58.

## Payment of Claims with the Discrimination Settlement Proceeds

▇ The Bankruptcy Code prescribes a specific, detailed scheme for distributing the assets of a bankruptcy estate in a Chapter 7 case. 11 U.S.C. § 726. Part of that distribution scheme targets bankruptcy cases commenced in states where community property laws have been enacted, such as Idaho. See Idaho Code § 32–901 et seq. The solution to the issue raised here is found at the intersection of Idaho's community property laws and the Code's distribution scheme.

2. Upon reflection, it appears the Court can resolve an additional, minor question raised by Ms. Hicks in her objection without extended discussion or a more extensive record. She objects to the trustee's plan to return undistributed estate funds to "Lloyd and Linda Hicks." Docket No. 48. Ms. Hicks notes that the trustee's Final Account mistakenly listed her name as "Linda" rather than Merri Beth, her correct name. She also asserts Mr. Hicks is not entitled to any excess funds from the lawsuit settlement. The trustee acknowledged the typographical error, Trustee's Mem. at 3, Docket No. 55, and at the hearing on September 12, Mr. Hicks appeared *pro se* and indicated he claimed no right to share in

any undistributed proceeds from the discrimination lawsuit. Based on the parties' representations to the Court, Ms. Hicks's objection on this point will be sustained.

3. On the whole, counsel for the parties made many cogent points in their post-hearing briefing. But many of those points are relevant to whether the discrimination lawsuit is separate or community property and whether the claims the trustee proposes to pay are separate or community claims. The Court assumes counsel will raise these points in the subsequent evidentiary hearing regarding the classification of the property and claims.

### A. Under Idaho community property law, a spouse's separate property is not liable for the other spouse's separate debts.

██ Idaho's marital property regime recognizes two forms of property: separate and community. Generally, a spouse's separate property consists of that owned before marriage, together with that acquired after marriage by gift, devise or bequest. *See* Idaho Code § 32–903. "[A]ll other property acquired after marriage", with a few exceptions not relevant here, is community property. Idaho Code § 32–906.

██ The characterization of property as separate or community is important in determining creditors' rights of recourse against each type of property. As explained in *Twin Falls Bank & Trust Co. v. Holley*, 111 Idaho 349, 723 P.2d 893, 896–97 (1986), "under the community property system ... when either member of the community incurs a debt for the benefit of the community, the property held by the marital community becomes liable for such a debt and the creditor may seek satisfaction of his unpaid debt from such property." In addition, the separate property of the spouse who incurs an obligation, whether that obligation benefits the marital community or only the individual, is subject to the creditor's claim. *Id.* at 897; *Williams v. Paxton*, 98 Idaho 155, 559 P.2d 1123, 1132 (1976).

██ However, a spouse's separate property is not subject to seizure to satisfy a debt incurred by the other spouse acting alone. Specifically, Idaho Code § 32–910 provides that "[t]he separate property of the husband is not liable for the debts of the wife contracted before the marriage."

So, too, Idaho Code § 32–911 provides that "[t]he separate property of the wife is not liable for the debts of her husband, but is liable for her own debts contracted before or after marriage." Finally, Idaho Code § 32–912 states that "any community obligation incurred by either the husband or the wife without the consent in writing of the other shall not obligate the separate property of the spouse who did not so consent ...." *See also Holley*, 723 P.2d at 897 (noting a bank would have a claim against a husband's separate property and any community property when borrowed funds benefitted the marital community but only the husband signed a promissory note).

### B. The Bankruptcy Code's rules for the distribution of community property in Chapter 7 cases.

██ As permitted by 11 U.S.C. § 302(a), Debtors filed a joint petition for bankruptcy relief.[4] While the Code dictates that "[t]he commencement of a case under [§ 302] ... of this title creates an estate," 11 U.S.C. § 541(a), the filing of a joint petition actually creates two estates, not one. This concept is acknowledged in § 302(b): "After the commencement of a joint case, the court shall determine the extent, if any, to which the *debtors' estates* shall be consolidated." 11 U.S.C. § 302(b) (emphasis added); *see also Ageton v. Cervenka (In re Ageton)*, 14 B.R. 833, 835–36 (9th Cir. BAP 1981) (noting joint filing creates two separate estates that may be consolidated); *In re Knobel*, 167 B.R. 436, 442 (Bankr.W.D.Tex.1994) (holding that community property laws do not necessitate *de facto* consolidation of two estates into one).

---

4. "A joint case under a chapter of [title 11] is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse." 11 U.S.C. § 302(a).

Under this "two estates" paradigm, § 541, which identifies the property that composes a bankruptcy estate, applies to both of the estates created by a joint filing. The relevant portion the statute provides:

[A bankruptcy estate] is comprised of
. . .

(1) . . . all legal or equitable interests of the debtor in property . . .

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

11 U.S.C. § 541(a)(1) and (2).

■ Once collected by the trustee, the property of the two bankruptcy estates created by a joint filing, as defined by § 541(a), is subject to the detailed methodology prescribed in § 726 of the Code for distributing funds from those estates to creditors and others. In particular, § 726(c)[5] contains special rules for the treatment and distribution of bankruptcy estate property when the estate includes assets defined as community property under applicable state law. These rules were intended to parallel the results of a distribution to creditors occurring outside of bankruptcy under state law. 6 Lawrence P. King, *Collier on Bankruptcy* ¶ 726.05[2], at 726–18 (15th ed. rev.2001).

■ In simple terms, in a case not involving a joint petition, § 726(c) requires the trustee to segregate all community property; to, in effect, create four "sub-estates" as described in § 726(c)(2)(A), (B), (C), and (D), each of which is comprised of different combinations of separate and community property; and to distribute estate assets based on a particular creditor's right to the assets in each sub-estate. This system is complicated when a joint petition is filed. *Collier* explains:

5. 11 U.S.C. § 726(c) provides:

Notwithstanding subsections (a) and (b) of this section, if there is property of the kind specified in section 541(a)(2) of this title, or proceeds of such property, in the estate, such property or proceeds shall be segregated from other property of the estate, and such property or proceeds and other property of the estate shall be distributed as follows:

(1) Claims allowed under section 503 of this title shall be paid either from property of the kind specified in section 541(a)(2) of this title, or from other property of the estate, as the interest of justice requires.

(2) Allowed claims, other than claims allowed under section 503 of this title, shall be paid in the order specified in subsection (a) of this section, and, with respect to claims of a kind specified in a particular paragraph of section 507 of this title or subsection (a) of this section, in the following order and manner:

(A) First, community claims against the debtor or the debtor's spouse shall be paid from property of the kind specified in section 541(a)(2) of this title, except to the extent that such property is solely liable for debts of the debtor.

(B) Second, to the extent that community claims against the debtor are not paid under subparagraph (A) of this paragraph, such community claims shall be paid from property of the kind specified in section 541(a)(2) of this title that is solely liable for debts of the debtor.

(C) Third, to the extent that all claims against the debtor including community claims against the debtor are not paid under subparagraph (A) or (B) of this paragraph such claims shall be paid from property of the estate other than property of the kind specified in section 541(a)(2) of this title.

(D) Fourth, to the extent that community claims against the debtor or the debtor's spouse are not paid under subparagraph (A), (B), or (C) of this paragraph, such claims shall be paid from all remaining property of the estate.

When a joint case has been filed by the spouses under section 302 ... section 726(c)(2) requires that six sub-estates be established. Sub-estate (A) is consolidated for both cases because creditors of either spouse holding community claims are entitled to reach assets in these sub-estates in either spouse's bankruptcy case. However, sub-estates (B) and (C) must be established for each spouse if sub-estate (B) community property or sub-estate (C) separate property passes to the estate, because *these sub-estates contain assets in which only the debtor's creditors may share.* Sub-estate (D), which contains only overflow assets, would be consolidated for each estate. Accordingly, the ability of a court to order full consolidation of the two estates will depend on whether sub-estates (B) and (C) exist for either of the spouses and the extent to which assets included in them should be made available to the other spouse's creditors.

*Collier on Bankruptcy, supra,* ¶ 726.05[2], at 726–22 (emphasis added); *see also Merlino v. Weinstein (In re Merlino),* 62 B.R. 836, 839–40 (Bankr.W.D.Wash.1986) (discussing § 726(c) and sub-estates).

■■■■ Thus, the filing of a joint petition creates two bankruptcy estates that are not automatically consolidated, but which can be upon proper request and after a hearing. One important factor in deciding whether to consolidate the estates is the existence of community/separate property and community/separate claims.[6] Because some creditors may not have recourse under state law against the separate property of both spouses in addition to any community property, absent a court order consolidating the two estates created

by a joint petition, the content of the separate estates is determined under § 541. After doing so, the assets of each estate are to be distributed as § 726(c) requires.

## C. The interplay between Idaho community property law and the Code's distribution scheme in this case.

■■■■ Given the problem posed in this case, the Court need only analyze the trustee's proposed distribution of Ms. Hicks's putative separate property. To start, it is clear that the Court has not ordered a consolidation of the two bankruptcy estates created when Debtors filed their joint bankruptcy petition. Therefore, the two estates must be administered separately. The composition of each estate must be defined under § 541, and the assets of each estate must be distributed according to § 726(c).

Ms. Hicks's separate property, which may include her claims for wrongful discrimination against her former employer arising before her marriage to Mr. Hicks, became part of her bankruptcy estate upon filing. 11 U.S.C. § 541(a)(1). And Debtors' community property would be part of both estates under § 541(a)(2). (This would have been a reason why consolidating the two estates could have made administration more manageable. *See Collier on Bankruptcy, supra,* ¶ 726.05[2], at 726–22.)

Because Ms. Hicks's estate contains community property, all the assets of her estate must be distributed as described in § 726(c). Under § 726(c), Ms. Hicks's separate property would be liable for payment of allowed administrative claims made in her case "as justice requires," 11 U.S.C. § 726(c)(1); for any allowed com-

---

**6.** Under the Bankruptcy Code, " 'community claim' means claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case." 11 U.S.C. § 101(7).

munity claims, 11 U.S.C. § 726(c)(2)(C), (D); and for payment of any allowed claims flowing from her separate debts, 11 U.S.C. § 726(c)(2)(C). But § 726(c) does not allow a distribution of Ms. Hicks's separate property to holders of claims that are enforceable against only Mr. Hicks's separate property under state law. *Fitzgerald v. Crain (In re Crain)*, 86 I.B.C.R. 224, 225 (Bankr.D.Idaho 1986) ("non-community debts other than [the debtor's] separate debts shall be denied by the Trustee.").[7] Indeed, a creditor's claim that is enforceable against only Mr. Hicks's separate property (*i.e.*, his "separate debt") could be disallowed in Ms. Hicks's bankruptcy case because she is not legally obligated to pay such a claim under state law. *See* 11 U.S.C. § 502(b)(1) (instructing the court to disallow a claim that "is unenforceable against the debtor and property of the debtor, under any . . . applicable law . . . .").

### The Resolution

Under Idaho law, Mr. Hicks's "separate debts" cannot be enforced against Ms. Hicks's separate property. Consistent with this rule, Congress constructed the Bankruptcy Code to prohibit distributions of Ms. Hicks's separate property from her bankruptcy estate to creditors of Mr. Hicks. Therefore, Ms. Hicks's objection to the trustee's use of her separate property to satisfy any debts of Mr. Hicks for which she is not responsible under state law has merit. In addition, the Court will sustain Ms. Hicks's objection to the trustee's proposal to return any undistributed funds from the bankruptcy estates to "Lloyd and Linda Hicks"; Merri Beth Hicks is entitled to the undistributed assets of her

bankruptcy estate, not Linda, and not Mr. Hicks, because he has disclaimed any interest in those funds.

If this matter is not resolved by the parties within thirty days, counsel for trustee shall schedule the matter for an evidentiary hearing to determine whether the discrimination settlement money is, in any part, the parties' community property, and to characterize the various allowed claims in this case as "separate" or "community." At that hearing, Ms. Hicks may address any remaining objections she has to the trustee's proposed Final Accounting not resolved by this decision.

---

7. *Crain* also held that community claims could be paid out of a debtor's separate property, which is part of the debtor's bankruptcy estate. 86 I.B.C.R. at 225. Although both Ms. Hicks and the trustee suggest there is some question as to whether Ms. Hicks's sep-

arate property can be used to pay community claims filed in her case, *Crain* and the other authorities discussed above make it clear that such property is available to creditors holding community claims, subject to the distribution scheme in § 726(c).