07-1657-bk
In Re: James & Karen Wornick

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2007

(Argued July 9, 2008)          Decided September 24, 2008)

Docket No. 07-1657-bk

----------------------------------------x

James Wornick, Karen Wornick,

Appellants,

v.

Thomas Gaffney,

Trustee-Appellee.

----------------------------------------x

B e f o r e:   POOLER and HALL, Circuit Judges,
               and TRAGER, District Judge.*

Appeal from an order of the United States District Court for the Western District of New York (Curtin, J.) with judgment entered on November 27, 2006, affirming the bankruptcy court's order sustaining an objection by the trustee to the Wornicks' claim of exemption for the cash surrender value of certain life insurance policies.

The judgment of the district court is reversed.

_____

* The Honorable David G. Trager of the United States District Court for the Eastern District of New York, sitting by designation.

DENIS A. KITCHEN, Esq.,
Williamsville, New York
for Appellants

LAWRENCE C. BROWN, Esq.,
Buffalo, New York
for Trustee-Appellee

TRAGER, District Judge:

In this bankruptcy appeal, the debtors, James and Karen Wornick, ask us to reverse a district court order holding that certain assets in connection with life insurance policies they each held for the benefit of the other were not exempt from the joint administration of their bankruptcy estates. Because the inchoate interest that a spouse beneficiary holds in a reciprocal life insurance policy does not constitute an asset of the beneficiary's estate, the judgment of the district court is reversed.

**Background**

The facts of this case are simple. On October 15, 2005, the Wornicks filed a joint petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code. At the time, James and Karen Wornick each owned whole life insurance policies on their own lives for the benefit of the other, and each of these policies had a cash surrender value.[1] James owned three policies payable on his death to Karen, with a total cash surrender value of $8,627.45, and Karen owned one policy payable on her death to

_____

[1] The "cash surrender value" of a life insurance policy is "[t]he amount of money payable when an insurance policy having cash value, such as a whole-life policy, is redeemed before maturity or death." Black's Law Dictionary 1586 (8th ed. 2004).

James, with a cash surrender value of $8,994.71.  The Wornicks claimed that the cash surrender values of these policies should be exempt from bankruptcy administration.  The trustee objected to these exemptions.  The bankruptcy court sustained the objections, ordering the Wornicks to turn over to the trustee the cash surrender values of the policies.  The Wornicks appealed to the district court, which affirmed.  This appeal followed.

**Discussion**

The only question this appeal presents is whether in a joint bankruptcy case of spouses who own reciprocal life insurance policies the bankruptcy estate of the beneficiary spouse is entitled to the cash surrender value of an insurance policy taken out by and insuring the other spouse.  In other words, if A buys an insurance policy on A's life and designates B as the beneficiary, and if A and B file jointly for bankruptcy protection, are B's creditors entitled to the cash surrender value of the policy?  The district court decided this question in the affirmative, and we review the district court's decision de novo.  See KLC, Inc. v. Trayner, 426 F.3d 172, 174 (2d Cir. 2005).

The Wornicks claim that the cash surrender value of their life insurance policies should be exempt under Section 3212 of

2

New York Insurance Law, which provides in pertinent part,

> [(a)](1) The term 'proceeds and avails', in reference to policies of life insurance, includes death benefits, accelerated payments of the death benefit or accelerated payment of a special surrender value, <u>cash surrender</u> and loan values . . . .
>
> . . .
>
> (b)(1) If a policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary, or made payable otherwise to a third person, such third person shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person effecting the insurance.
>
> [(b)](2) If a policy of insurance has been or shall be effected upon the life of another person in favor of the person effecting the same or made payable otherwise to such person, the latter shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person insured. If the person effecting such insurance shall be the spouse of the insured, he or she shall be entitled to the proceeds and avails of such policy as against his or her own creditors, trustees in bankruptcy and receivers in state and federal courts.

N.Y. Ins. Law § 3212 (emphasis added); <u>see also</u> 11 U.S.C. § 522(b)(2) (providing that states may exempt certain property from bankruptcy administration); N.Y. Dr. & Cr. Law § 282 (providing that insurance policies are exempt from bankruptcy

administration as provided in Section 3212 of the Insurance Law).

In essence, subsection (b)(1) says that if A buys insurance on A's life and designates B as the beneficiary, then any interest B has in the proceeds and avails of the policy is protected against A's creditors. And subsection (b)(2) says that if A buys insurance on B's life and designates A as the beneficiary, then any interest A has in the proceeds and avails of the policy is protected against B's creditors, and moreover, if A and B are married, then A's interest is protected against A's creditors as well.

The Wornicks' claim presents the slightly different question of whether the cash surrender value of an insurance policy purchased by A on A's life for the benefit of B is protected against B's creditors, and thus does not fit precisely into either of the exemptions provided by Section 3212(b)(1) & (2). In rejecting their claim to an exemption, the district court concluded that the cash surrender values of these insurance policies were insulated only against the creditors of the insured and not against the creditors of the beneficiary.[2] We disagree.

---

[2] The district court's holding was consistent with a prior decision of the Western District of New York, Teufel v. Schlant, No. 02 Civ. 81S, 2002 U.S. Dist. LEXIS 27930 (W.D.N.Y. Sept. 24, 2002), which itself resolved what had been a conflict among the bankruptcy judges in the district on this issue – compare In re Mata, 244 B.R. 580 (Bankr. W.D.N.Y. 1999) (Kaplan, J.) (holding that Section 3212(b) did not exempt the cash surrender value of

4

It has long been the law that "[t]he beneficiary of a life insurance policy, who may at any time be removed from the benefited position by the insured and against the beneficiary's will, cannot have a vested interest." In re Greenberg, 271 F. 258, 259 (2d Cir. 1921); see also In re Solomons, 2 F. Supp. 572, 574 (S.D.N.Y. 1932) (noting that when the insured reserves the right to change the beneficiary, the cash surrender value is an asset of the insured). The filing of a bankruptcy petition creates a bankruptcy estate, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Whether the debtor has a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law." Musso v. Ostashko, 468 F.3d 99, 105 (2d Cir. 2006). Under New York law, the revocable beneficiary of a life insurance policy has "a mere expectancy or . . . an inchoate right [in the policy] depending entirely upon the will of the insured." Davis v. Modern Indus. Bank, 279 N.Y. 405, 410, 18 N.E.2d 639, 641 (1939). As such, the beneficiary has no legal

---

an insurance policy from the beneficiary's creditors), with In re Polanowski, 258 B.R. 86 (Bankr. W.D.N.Y. 2001) (Bucki, J.) (holding that the exemption did apply in cases like this because the beneficiary holds no administrable interest in a spouse's life insurance policy), overruled by Teufel, 2002 U.S. Dist. LEXIS 27930. As discussed below, we agree with Judge Bucki's opinion in Polanowski.

5

or equitable interest in the policy that could be made part of the property of the beneficiary's bankruptcy estate. Section 541(a)(5) of the Bankruptcy Code, entitled "Property of the Estate," accords with this well-established principle by providing that a debtor's interest in a life insurance policy is only property of the bankruptcy estate when the debtor acquires or becomes entitled to acquire the proceeds either before or within 180 days of filing the bankruptcy petition. 11 U.S.C. § 541(a)(5).

With regard to the insurance policies at issue here, the insured could have changed the beneficiary at any time prior to filing for bankruptcy, and the beneficiary would have had no claim to the cash surrender value. It must be remembered that the trustee stands in the shoes of the debtor and can only assert claims that the debtor could have asserted prior to filing for bankruptcy. See, e.g., In re CBI Holding Co., 529 F.3d 432, 447 (2d Cir. 2008) (noting that "a bankruptcy trustee stands in the shoes of the bankrupt corporation and can maintain only those actions that the debtors could have brought prior to the bankruptcy proceedings") (internal citations and quotations omitted). Thus, it seems obvious that because the beneficiary here holds nothing more than an inchoate interest and has no claim to the cash surrender value of the spouse's insurance

6

policy, the cash surrender value is not subject to administration by the beneficiary's trustee in bankruptcy.

It has been suggested, however, that the Bankruptcy Reform Act of 1978, by allowing for the first time spouses to file jointly, worked a fundamental change in the powers of a bankruptcy trustee to administer the estates of spouses in cases like this. See Teufel, 2002 U.S. Dist. LEXIS 27930, at *13-14 (suggesting that the identical issue on appeal before the Western District of New York presented a question of first impression because spouses could not file joint bankruptcy petitions prior to 1978); In re Jacobs, 264 B.R. 274, 277-78, 292-93 (Bankr. W.D.N.Y. 2001) ("[T]he Bankruptcy Reform Act of 1978 dramatically changed such things, and there should be no doubt that in the absence of an exemption statue, the beneficiary's interest (whatever that is) in a life insurance policy is not exempt in the bankruptcy case of the beneficiary."). Indeed, the district court in this case followed a line of cases that generally concluded that in a joint bankruptcy case, the trustee can reach those assets that the couple, acting together, could have reached prior to bankruptcy. For instance, In re Jacobs compared the issue in this case regarding the cash surrender values of reciprocal insurance policies to

> a million-dollar Stradivari-crafted violin
> sitting in a safe-deposit box with its

7

owners, husband and wife, each holding one of two necessary keys to the box; and then the couple filing joint bankruptcy to get rid of their debts and arguing to their creditors and the bankruptcy court that neither one alone has a "choate" or attachable right to the Stradivarius, but only a "mere expectancy" that the other will co-operate when needed.

Id. at 292. In such a case, according to In re Jacobs, "the trustee may agree with himself or herself as trustee in two different estates to retrieve the million-dollar Stradivarius from the safe-deposit box." Id. at 294. Following this general line of reasoning, the lower courts in this case concluded that the trustee of the Wornicks' estates, standing in the shoes of both spouses, could agree with himself to cash out the insurance policies for the benefit of the beneficiaries' creditors. In other words, because the Wornicks as a couple could have agreed to cash out these insurance policies, the lower courts concluded that the trustee was also empowered to do so by virtue of the joint filing. We do not think this analysis is correct.

While Section 302 of the Bankruptcy Code allows spouses to file jointly, it does not automatically consolidate their estates. 11 U.S.C. § 302(b) ("After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated."); see also In re Jorczak, 314 B.R. 474, 480 n.8 (Bankr. D. Conn. 2004) ("A joint

8

petition does nothing more than simultaneously commence two individual cases. . . . [When a joint petition is filed] two separate bankruptcy estates-the husband's and the wife's – are created. A joint petition . . . , unless substantively consolidated, does not affect the legal rights or obligations of the debtors, the creditors or the trustee.") (internal citations and quotations omitted); In re Arnold, 33 B.R. 765, 767 (Bankr. E.D.N.Y. 1983) ("Although a joint petition is filed, estates are in legal effect separate or several. Section 302 has procedural effect only. Although a husband and wife file a joint petition, there are in fact two separate debtors. The right of exemption is a personal privilege.") (emphasis added). And the trustee in this case does not claim that the bankruptcy court ever entered an order consolidating the Wornicks' estates. Nor does joint administration allow the property of one spouse to be used to satisfy the debts of the other spouse. See generally 2 Collier on Bankruptcy P 302.02 (15th ed. 2005) (citing In re Hicks, 300 B.R. 372 (Bankr. D. Idaho 2003)). Thus, in our view, the trustee may not reach assets in a joint filing that he could not have reached had the spouses filed separately. Here, had the Wornicks filed separate bankruptcy petitions, the trustee would have been powerless to administer the cash surrender value as part of the estate of the owner/insured because Section 3212(b)(1) provides

an express exemption in favor of the beneficiary. Likewise, because the beneficiary's interest in the proceeds and avails of the policy is inchoate, the trustee, standing in the shoes of the beneficiary, would have been powerless to administer property to which the beneficiary had no legal claim, notwithstanding the lack of an exemption insulating the cash surrender value from administration as part of the estate of the beneficiary. A joint filing does not vest the trustee with the power to reach a spouse's assets that would have otherwise been insulated, and in the Wornicks' joint bankruptcy case, the cash surrender values of their insurance policies are not administrable.

Indeed, to hold otherwise, and to allow the trustee to administer the cash surrender values of these insurance policies, would leave this area of the law in an awkward stance. As noted above, Section 3212(b)(2) provides that if A and B are married, and A buys insurance on B's life and designates A as the beneficiary, then the proceeds are not reachable by the creditors of either A or B. This exemption would also apply if B purchased the insurance and then assigned it to A. See, e.g., In re Rundlett, 142 B.R. 649, 654 (Bankr. S.D.N.Y. 1992) (holding that "when a husband assigns a life insurance policy on his life to his wife, he is deemed to have acted as her agent so that she should be regarded as having caused or effected the policy, with

the result that the proceeds, including the cash surrender value, are exempt from the wife's creditors"). Debtors who are similarly situated to the Wornicks, therefore, could easily insulate their collective insurance policies from creditors by simply transferring ownership of each policy from one spouse to the other prior to filing for joint bankruptcy; the insured and beneficiary could remain the same. Another option available to similarly situated debtors would be to change the beneficiaries of their policies prior to filing, after which the insured could claim an exemption under Section 3212(b)(1).[3] That the Wornicks

---

[3] Whether either of these transfers could be deemed fraudulent need not be parsed here. Nonetheless, it bears noting that "even the conversion of nonexempt property into exempt property by an insolvent contemplating bankruptcy has been held a transaction not intended to defraud creditors in the absence of evidence of extrinsic fraud." In re Adlman, 541 F.2d 999, 1005 (2d Cir. 1976). New York's Fraudulent Conveyance law defines "assets of a debtor" as "property not exempt from liability for his debts. To the extent that any property is liable for any debts of the debtor, such property shall be included in his assets." N.Y. Dr. & Cr. Law § 270 (emphasis added). In cases like this, the debtor who would be doing the transferring is the insured, not the beneficiary, and in the estate of the insured the cash surrender value is exempt under Section 3212(b)(1). In other words, A is transferring property that cannot be used to satisfy A's debts, which is by definition not a fraudulent conveyance. Moreover, "Conveyance" is defined as including "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." Id. Because, as discussed above, a beneficiary holds only an inchoate interest in an insurance policy, merely changing a beneficiary cannot be considered a conveyance of property capable of being fraudulent. See, e.g., First Wisconsin Nat'l Bank of Milwaukee v. Roehling, 269 N.W. 677, 679 (Wis. 1936) (holding that changing the

11

failed to foresee the utility of such trivial maneuvers prior to filing for bankruptcy should not disqualify them for the protection of New York's life insurance exemption.

## Conclusion

In sum, the trustee wants to administer the cash surrender values of insurance policies as non-exempt assets of the beneficiary. Any leviable interest in this property, however, belongs to the owner/insured, not to the beneficiary. Section 3212(b)(1) protects the cash surrender value from the creditors of the owner/insured, and because the beneficiary owns no administrable interest, the property is not subject to administration. Therefore, the order of the district court is reversed.

---

beneficiary of an insurance policy is not a conveyance and cannot be considered a fraudulent transfer). We are aware of no cases in which similar transactions were found to be fraudulent conveyances.